*In re* WESLEY D. WRIGHT, *Petitioner.*

No. 14,969.   (86 Pac. 460.)

SYLLABUS BY THE COURT.

CRIMINAL LAW—*Plea in Abatement—Insanity—Void Commitment.* Where a person charged with a felony is arraigned before an examining magistrate, and files a plea in abatement, founded upon an adjudication regularly and duly had before a probate court of that county that the defendant is insane, the examining magistrate, in the absence of any other showing or adjudication upon the question of the defendant's mental condition, cannot proceed with such examination or hold the defendant to bail to answer for such crime, and a commitment in default of bail under such circumstances is void.

Original proceeding in *habeas corpus.* First opinion filed July 6, 1906. Writ allowed. Rehearing granted November 10, 1906. Second opinion filed March 9, 1907. Writ denied.

*Dale & Amidon,* for petitioner.

*C. C. Coleman,* attorney-general, and *J. A. Brubacher,* county attorney, for respondent.

The opinion of the court was delivered by.

GRAVES, J.: This is an application for a writ of *habeas corpus*. The petitioner is confined in the Sedgwick county jail under an order of commitment issued by the judge of the city court of the city of Wichita, as an examining magistrate. The petitioner claims that he was insane at the time of the preliminary examination, and could not be held to answer to, or defend against, the charge made against him.

The facts, briefly stated, are as follow: The petitioner was duly charged in the city court of the city of Wichita with having, on March 20, 1906, committed the crime of burglary and larceny. He was arrested and arraigned March 26, 1906. At that time the petitioner demanded a preliminary examination, and the case was thereupon continued to March 30, 1906. When the case was called the county attorney obtained leave to file an amended complaint, which was done at once. A new warrant was issued and served by the arrest of the defendant immediately. The petitioner was then and there arraigned, and he again demanded a preliminary examination. By consent the hearing thereof was continued to April 3, 1906, and when the case was then called it was again continued by consent to April 4, 1906. When the case was called on April 4, 1906, the defendant filed a plea in bar, which was overruled, and the preliminary examination proceeded, resulting in an order requiring the petitioner to give bond in the sum of $750 for his appearance at the next term of the district court to answer to the charge of burglary and grand larceny. In default of bail he was committed to jail, where he still remains. On March 29, 1906, an affidavit was filed in the probate court alleging the insanity of the petitioner. An examination was had April 3, 1906, which resulted in a verdict finding the defendant insane. This verdict was the foundation of the plea in bar.

It is here urged that the legal effect of this verdict was to oust the examining magistrate of jurisdiction to proceed, and that all action thereafter was void.

It is universally conceded that a defendant cannot be compelled to answer to, or defend against, a criminal charge when by reason of an insane mental condition he is unable to do so in a rational manner. The principal objection urged in this court is that the court having possession and jurisdiction of the defendant in a criminal proceeding ought to be entrusted with the duty of determining whether he is mentally fit to make proper defense or not, and should not be liable to be interrupted in the performance of its duty by the proceedings of another court.

By chapter 60 of the General Statutes of 1901 full authority is conferred upon the probate court to examine into the mental condition of persons and adjudge whether they are insane or not, and that court having duly adjudged the petitioner to be insane when the preliminary examination was had and when the order of commitment was made, such adjudication, in the absence of any showing or finding to the contrary, must be deemed conclusive upon this question. If the examining magistrate, after the plea in abatement was filed, had upon an examination of his own found and decided that the petitioner had sufficient mental capacity to make a rational answer and defense, a conflict of jurisdiction would have arisen, and a materially different and more difficult question would be presented. Upon the facts before us, however, we feel bound to find that the petitioner was insane when the preliminary examination was had, and when the order of commitment was made, and for that reason both are void. The writ is allowed, and the petitioner ordered turned over to the jurisdiction of the probate court of Sedgwick county, there to abide the order and judgment of that court concerning him.

All the Justices concurring.

*In re* Wright.

## OPINION ON REHEARING.
### (89 Pac. 678.)

1. CRIMINAL LAW—*Mental Disability of Defendant at the Time of Trial.* No person can be compelled to answer for a crime who at the time is incapable of doing so in a rational manner on account of mental disability occurring after the alleged commission of the offense charged against him.

2. ———— *Jurisdiction to Determine Defendant's Mental Fitness for Trial.* The court having jurisdiction of a person charged with the commission of a crime has the exclusive right and power to determine the mental fitness of the defendant to make proper answer and defense to such charge, unless otherwise provided by statute.

3. ———— *Duty to Make Inquiry—Forcing Insane Person to Trial—Void Proceedings.* Where upon the trial of a person charged with a crime it is claimed that he is then unable to make answer and defense thereto in a rational manner, because of mental incapacity which has arisen since the alleged commission of the offense, it is the duty of the court where such trial is pending to make inquiry concerning such disability, and, if found to exist, to stop further proceedings in the trial until such disability has been removed. Failure in this respect, whereby an insane person is forced into trial, will render all subsequent proceedings void.

4. ———— *Verdict of Insanity Not Conclusive Proof of Defendant's Incapacity for Trial.* A verdict of insanity found under chapter 99 of the General Statutes of 1901 does not conclusively show that the person therein named is a lunatic or mentally unfit to answer or make defense to a criminal charge against him.

5. HABEAS CORPUS—*Burden of Proving Void Proceedings.* A writ of *habeas corpus* can only be issued in behalf of a person who is confined in prison when it is shown that the legal proceedings under which he was committed are void, and the burden is upon the petitioner affirmatively to make such showing.

6. PRACTICE, SUPREME COURT—*Presumption as to Regularity of Proceedings.* Where the record fails to show what action was taken by the court with reference to some particular matter in a proceeding it will be presumed, in the absence of any showing to the contrary, that the action of the court was regular and in accordance with the law.

The opinion of the court was delivered by

GRAVES, J.: The petitioner applied to this court to be released from confinement in the Sedgwick county jail by a writ of *habeas corpus*. The petitioner was ordered discharged. Afterward a rehearing was granted, and the application is now here for reconsideration.

The facts show that the petitioner was charged with a felony, and arrested March 26, 1906, upon a warrant issued by the city court of the city of Wichita. He was brought before the judge of that court on the same day for a preliminary examination. The hearing was continued to March 30, at which time it was again continued to April 3, when it was postponed to April 4, 1906. On March 29 complaint was made to the probate court of that county that the petitioner was a lunatic, and on April 3 an examination was had upon such complaint, resulting in a verdict finding substantially that he was a fit subject to be sent to a hospital for brain disease or insanity. On April 4 the petitioner appeared before the magistrate and filed a plea in bar containing a full statement of the proceedings and verdict had in the probate court, and asked that he be discharged for the reason that the court had lost jurisdiction by such proceedings and verdict. The court overruled the plea and proceeded to hold a preliminary examination, which resulted in binding the defendant over to appear in the district court, and upon failure to give the required bond he was committed to jail.

It is conceded that the proceedings of the examining magistrate, including the order of commitment, are regular and proper, if the action of the probate court did not deprive him of jurisdiction. This makes it necessary to consider the law under which the probate court acted. The proceedings were had under chapter 99 of the General Statutes of 1901. The purpose of that law is to provide procedure whereby a judicial

*In re* Wright.

determination may be had of whether or not the person being examined is a proper subject to become a patient in the state hospital for the insane. By its provisions any person may be admitted who by reason of brain sickness has become incapable of caring for his own estate or is a fit subject for care and treatment in a hospital for brain diseases or insanity. The meaning of the word "insane," as used in that law, is expressly limited, and applies to any degree of mental derangement for which the patient might be admitted to the state hospital for care and treatment. (Gen. Stat. 1901, § 6570.) This includes every phase of a disordered mind, from temporary nervous excitement to acute insanity. It cannot be said, therefore, that a verdict under this statute finding the person examined to be insane necessarily means that he is bereft of all reason or incapable of protecting his own interests in a lawsuit.

Upon the examination of the petitioner in this case he was found by the jury to be suffering from mental strain of five days' duration, and to be in such a condition as to make him a fit person to be sent to the state hospital. The physician juror added his opinion to the verdict that the patient was suffering from temporary mental strain. It does not appear whether or not any evidence was offered upon the hearing of the plea in bar, except the proceedings in the probate court. These facts show that the examining magistrate had jurisdiction of the defendant continually from the time he was arrested until the order of commitment was issued, and that, having such jurisdiction, it was his right and duty to determine every question involved in a preliminary examination under the warrant, including the mental fitness of the defendant to make his defense. It is the law of this country, independent of any statute, that a defendant shall not be compelled to answer to, or defend against, a criminal charge if mentally or physically unable at the time to do so in a rational manner, when such disability has developed after

the alleged commission of such crime; but, in the absence of a statute to the contrary, the duty of determining whether or not such disability exists rests with the court whose duty it is to hear such answer or defense.

When the attention of a court is called to the fact that the defendant about to be arraigned before it is unable, because of mental disability, to make proper defense to the accusation against him, it is doubtless the duty of the court to take notice of the suggestion and to make such inquiry concerning it as will fully protect the rights of the accused. Upon such an inquiry the findings of a court in a lunacy proceeding, and any other proper evidence, may be received and considered. The verdict and proceedings presented to the magistrate in this case can only be considered as evidence tending to show the present mental condition of the petitioner. It appears that this evidence was offered for another and different purpose, but the object and manner of its presentation are immaterial. It was sufficient to call the attention of the court to the claim that the defendant was insane and incapable of making proper answer to the charge pending against him. This was a matter of too much gravity to be ignored because of any supposed irregularity in the form of its presentation. It was the duty of the magistrate to take notice of this claim and determine the defendant's mental condition before proceeding further with the examination.

A writ of *habeas corpus* can only be allowed in behalf of a person who has been committed to prison when it is made to appear that the proceedings under which the order of commitment was made are wholly void. If the examining magistrate, upon the presentation of the plea in bar, considered and determined upon the evidence presented that the petitioner was mentally capable of making proper answer and defense to the complaint against him, then all the proceedings were regular and in the usual form. It does not appear that this was not done, and in the absence of such a show-

ing we are bound to presume that the court fully protected the rights of the accused in this respect. The burden.was upon the petitioner to make a showing which would entitle him to the writ; having failed to do so, the writ cannot be allowed.

At the former hearing a writ was granted upon the understanding that the inquest of lunacy was had under the provisions of chapter 60 of the General Statutes of 1901, where the word "insane" signifies bereft of reason—a lunatic—and not a mere mental strain or brain sickness, such as might properly receive medical attention; and also because, by a misconstruction of the record, we were led to assume that the examining magistrate ignored the claim that the petitioner was insane and forced him to trial without considering that question.

Upon the rehearing we are convinced that in both these matters we were wrong, and for that reason the decision was erroneous. The writ is now denied.

All the Justices concurring.