No. 27,838.

THE STATE OF KANSAS, *Appellee,* v. DELOS DETAR, *Appellant.*

(263 Pac. 1071.)

SYLLABUS BY THE COURT.

1. CRIMINAL LAW — *Separate Trial of Issue of Insanity — Duty to Make Preliminary Investigation Before Proceeding With Trial.* The defendant was charged with a felony, and in the process of impaneling a jury to try him questions were asked by his counsel implying that the defendant was insane at the time, and thereupon counsel for the state presented a motion for a preliminary investigation as to present insanity, stating that it had been brought to the attention of the court that the defendant was insane at that time, by the questions asked by defendant's counsel, and also by the demeanor of defendant in court. The court overruled the motion and proceeded with the trial on the merits, in which much evidence of expert witnesses as well as of nonexperts was given, to the effect that the defendant was then insane. *Held,* that it was the duty of the court to make a preliminary investigation whether the defendant was incapable of comprehending his position and to make his defense before proceeding further with the trial of the case on the merts.

2. SAME—*Preliminary Investigation of Insanity— Formal Application Unnecessary.* A formal application by the parties, or either of them, for such an inquiry is not essential to ordering it to be held where it is otherwise brought to the attention of the court, and where the court learns from observation, reasonable claim or credible source, that there is doubt of defendant's mental capacity to comprehend his position and to make his defense.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed February 11, 1928. Reversed.

Criminal Law, 16 C. J. pp. 789 n. 40, 791 n. 54.

State v. Detar.

*J. N. Tincher, Don Shaffer, Mabel Jones Shaffer, Rubert G. Martin,* all of Hutchinson, and *A. L. Moffat,* of Kinsley, for the appellant.

*William A. Smith,* attorney-general, *Roland Boynton,* assistant attorney-general, *Charles Hall,* county attorney, and *John Fontron,* assistant county attorney, for the appellee; *J. R. Beeching,* of Hutchinson, of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.:   In an information Delos Detar was charged with assault upon J. E. Eaton, an assistant cashier of a bank, with a deadly weapon, and in a second count he was charged with felonious entry of the bank with intent to rob.   Under the first count he was convicted of simple assault, and on the second count of bank robbery.   The question of his sanity was raised at the opening of the case, and in the course of the trial four physicians who were called testified that they had known the defendant for years and that he had been and was of unsound mind, that he was insane at that time, and in his mental state was unaccountable and could not distinguish right from wrong.   His father, who is also a doctor, testified to a number of things proposed and done by the defendant which tended to show irresponsibility and insanity.   He stated that his persent mental condition was due to an injury he had sustained in 1925 when there was an explosion of an air tank which hurled him six or eight feet against metal obstructions, that his left arm was blown off and his body lacerated, and that since that time he has been more or less irresponsible, and is now insane.   Other witnesses who were not physicians and who knew the defendant testified that from his manner and actions they regarded him to be insane. Several witnesses produced by the state who had seen and talked with defendant about the time the offense was committed, stated that they believed him to be sane.

The principal question presented here is whether a sufficient claim was made of the mental disability of the defendant which rendered him unfit to answer the charge and make a defense.   It appears that in the impaneling of the jury the attorneys for the defendant asked questions implying that the defendant had been and is insane, and inquiring as to the attitude of the jurors where that question was involved.   After that course had been pursued for some time, and before the jury had been sworn to try the case, the following motion was made by the prosecution:

"Comes now the state of Kansas and makes application to the court that

the court appoint a tribunal such as provided by statute, either to sit as a jury or commission to inquire into the sanity or insanity of the defendant as of the present time, for the reason and upon the grounds that it has been brought to the court's attention that the defendant's sanity or insanity is in question as of this time by the manner and form of the questions asked by the defendant's counsel in the examination of the jurors, and by reason of the defendant's demeanor while in the court room, sitting with head bowed down and taking no apparent interest in the trial."

The jury was excused for a time, and the court, after hearing arguments on the motion, overruled it and directed counsel to proceed with the trial on the merits. The matter of whether the defendant was insane at the time of the trial and mentally capable of making a defense was brought to the attention of the court and furnished sufficient grounds for a preliminary inquiry on the question before proceeding with the trial on the merits. When that question is raised and there are grounds for such an investigation it is the duty of the court, in one of the statutory methods, to ascertain and determine whether the defendant has the mental capacity to comprehend the charge made against him and to make a defense.

Our statute provides, among other things, for such an investigation before or during a trial and before the verdict is rendered. The inquiry may be made by the court in which the information or indictment is filed or by a commission or another jury impaneled for that purpose, and if the defendant is found to be insane and unable to comprehend his position and to make his defense, the court is required forthwith to commit him to the state asylum for the dangerously insane for safe-keeping and treatment until he shall recover, when he shall be returned to the same court and placed upon trial on the criminal charge. (R. S. 62-1531.) Even if there had been no statutory provision for an investigation it would on general principles have been required. In 16 C. J. 789, it is said:

"As we have seen, a person, who by reason of insanity is unable to comprehend his position and to make his defense, cannot be placed upon trial for a crime while in such condition, and hence, both at common law and under some statutes, if the court either before or during the progress of such trial, from observation or from pleading or suggestion of counsel, has facts brought to its attention which raise a doubt as to the present condition of defendant's mind, in this respect the question should be determined before another step is taken."

In answer to the complaint that a preliminary investigation was refused, the state says:

"The trial judge in this case in overruling the state's application for a commission, decided that no sufficient claim had been made that the defendant was a madman."

As we have seen, it was brought to the attention of the court informally by the defendant and formally by the state. The manner in which the necessity for an inquiry is raised as to the present insanity is not of much importance. It may be ordered on formal application or where no application is made, when the court learns from observation, reasonable claim or credible source, that there is a real doubt of defendant's mental condition to comprehend his situation or make his defense. This court had occasion to consider the matter of preliminary inquiry as to present insanity and the method of bringing it to the attention of the trial court, and it was said:

"When the attention of a court is called to the fact that the defendant about to be arraigned before it is unable because of mental disability to make proper defense to the accusation against him, it is doubtless the duty of the court to take notice of the suggestion and to make such inquiry concerning it as will fully protect the rights of the accused." (*In re Wright*, 74 Kan. 406, 412, 86 Pac. 460, 89 Pac. 678.)

And after referring to certain evidence the court proceeded further:

"It appears that this evidence was offered for another and different purpose, but the object and manner of its presentation are immaterial. It was sufficient to call the attention of the court to the claim that the defendant was insane and incapable of making proper answer to the charge pending against him. This was a matter of too much gravity to be ignored because of any supposed irregularity in the form of its presentation. It was the duty of the magistrate to take notice of this claim and determine the defendant's mental condition before proceeding further with the examination." (p. 412.)

In a later case where the claim was brought to the attention of the court in a motion for a continuance, and the affidavits filed in support of the motion, the counsel for the state suggested a preliminary investigation of present insanity, but the counsel for defendant responded that they were not applying for such an inquiry and stood upon their motion for a continuance. The court overruled the motion for a continuance and proceeded with the trial on the merits. The judgment of conviction was reversed, and a holding made that when it is brought to the attention of the court that a defendant charged with a crime and about to be tried is incapable because of mental disability to make proper defense, the court should investigate the defendant's mental condition before going forward with

the proceeding, and that it is not necessary to such an inquiry that the state or the defendant should make formal application for it. It was said:

"As indicated in the Wright case, it made no difference that the showing of present insanity was made in affidavits supporting an application for a continuance only. When the showing was presented it was the court's duty to find out if the defendant was in fit mental condition to be tried, whether counsel for either side made application for the inquiry or not. In effect the law made the application for the defendant, and however the attorneys might fence about the matter, the court was not authorized to proceed with the trial on the merits until it had ascertained by one of the statutory methods whether the defendant was capable of making a rational defense." (*State v. Ossweiler*, 111 Kan. 358, 367, 207 Pac. 832.)

The necessity for an inquiry was sufficiently brought to the attention of the court at the outset before the jury was impaneled, and certainly after several experts had testified that defendant was of unsound mind and irresponsible at the time of the trial, good grounds were shown to require the court to stop the trial and investigate his mental capacity to comprehend his position and to make his defense. Under the statute this may be done before or during the trial and at any time before the verdict is rendered.

For failing to make the preliminary investigation the judgment is reversed, and the cause remanded for further proceedings.