No. 29,366.

THE STATE OF KANSAS, *Appellee*, v. ETHEL BROTHERTON, *Appellant*.

(291 Pac. 954.)

Opinion filed October 11, 1930.

*Spencer B. Apple, C. B. Skidmore,* both of Columbus, *Frank Nesbitt, F. W. Church,* both of Miami, Okla., and *William Sims,* of Vinita, Okla., for the appellant.

*William A. Smith,* attorney-general, *Arthur S. Brewster,* assistant attorney-general, *Leo Armstrong,* county attorney, and *Marc. G. Boss,* assistant county attorney, for the appellee.

The opinion of the court was delivered by

JOCHEMS, J.: The defendant was convicted of second-degree murder, and appeals to this court.

The record shows that the defendant and her two sons, Willie, aged fourteen, and an older boy, lived in a small frame house in Baxter Springs; that her father was a Quapaw Indian; that a girl named Bonnie Davis, sixteen years of age, whose parents lived in Hockerville, Okla., had left home and was working at Baxter Springs; that on the evening of June 11, 1929, Bonnie Davis came to defendant's home and took Willie, the defendant's younger son, to a picture show; that they returned after the show and Bonnie stayed all night at the defendant's home; that she·slept in the same bed with defendant, the two boys sleeping on the floor; that about 8:30 o'clock the next morning, June 12, 1929, the body of Bonnie Davis was discovered in the rear of defendant's back yard lying

in a pathway between the house and a small outdoor toilet located at the rear end of the lot; that when discovered her body was still warm. An autopsy disclosed that death was caused by a 22-caliber gunshot wound through the heart. The premises were searched. The gun was not found, but three 22-caliber shells were found underneath the floor of the toilet, having apparently been dropped through a crack in the floor. The defendant was taken to the police station for questioning. In her first statement she denied all knowledge of the gun. She also denied that Bonnie had stayed with her the previous night. After contradicting herself she later admitted that Bonnie Davis had stayed there the night before and told the officers she had found the gun beside the body and taken it to her sister's place about three blocks away, where she had hidden it. The defendant went with the officers to her sister's home, found the gun and delivered it to them. She then made a statement which was taken down in writing. Later she asked to see the mayor, and in a conversation with him relative to the matter stated that she objected to Bonnie Davis going around with her boy Willie; that she did not like Bonnie and did not want him running around with her. She stated that the killing was accidental; that in the morning she had told Bonnie to leave and not come back, and that Bonnie told her she would; that she followed Bonnie out to the toilet; then she got the gun from under her pillow and accidentally shot Bonnie. She made two statements in the county attorney's office which were taken down in writing, transcribed and signed by her.

At the trial in the district court, after the jury had been impaneled, counsel for defendant in his opening statement announced that the defendant was feeble-minded. He stated that one of the defenses was that if it should be determined that the defendant did shoot Bonnie Davis, as alleged in the information, that she was so feeble-minded at the time as to be wholly unable to appreciate the character and consequences of her act in so doing, and furthermore, that at the time of the trial the defendant was so feeble-minded as to be unable to defend herself; that the testimony of responsible doctors, including Doctor Carmichael, head of the state asylum for the insane at Osawatomie, would show that the defendant is feeble-minded; that she has the mind of a seven- or eight-year-old child. Thereafter the testimony of two witnesses on behalf of the

state was taken and the court thereupon summarily remanded the defendant to the probate court for determination of her mental condition. The probate judge announced that under the procedure it would be necessary to serve five days' notice of hearing upon the defendant, and it being apparent that the trial would be delayed approximately a week, the court called in the jury, gave them careful admonition and excused them for one week. This permission of the jury to separate and go to their homes was done by the court over the objection of both the state and the defendant. Thereupon proceedings were had in the probate court; a hearing was had before a commission of two physicians appointed by the probate judge; evidence was introduced by the defendant and by the state, and after due consideration and after the physicians composing the commission had made a private examination of the defendant with no other person present, a decision was reached to the effect that, "Ethel Brotherton is not feeble-minded to the extent that she is unable to comprehend her position so as to be unable to defend herself in the criminal charge now pending against her in the district court. . . ." Following this decision the defendant promptly perfected an appeal to the district court. The judgment of the probate court was duly entered in the district court on October 22, 1929. The defendant, through counsel, notified the district court that an appeal had been taken to the district court from the judgment in the probate court. Thereupon the district court notified the state and the defendant that he himself was going to determine the question of defendant's feeble-mindedness and proceeded thereupon to hold a hearing upon which substantially the same testimony was introduced as had been introduced before the probate court, and following this the district court ruled that the defendant "is not a feeble-minded person, an imbecile, nor an insane person, and is competent to realize her position and make her defense in this case." The case proceeded to trial before a jury in the district court, and in the course of this trial the defendant introduced substantially the same evidence to prove feeble-mindedness as had been introduced in the probate court and in the separate hearing had in the district court by the district judge. The court instructed the jury, and after submission of the case to the jury a verdict was returned finding the defendant guilty of murder in the second degree.

On the appeal the defendant urges that the court erred in proceeding with the trial of the cause in the district court after he had remanded the defendant to the probate court for determination as to her feeble-mindedness, and after an appeal had been perfected from the decision of the probate court. The defendant contends that this appeal should have been tried and disposed of before the trial was proceeded with in the district court. This is the principal question raised in the appeal. However, the defendant also urges that the court erred in permitting the jury to separate for a week over the objection of both the state and defendant; that the court erred in admitting incompetent and improper evidence and in the giving and refusing of instructions.

We shall first discuss defendant's contention that the district court erred in proceeding with the trial of the criminal case prior to disposing of the hearing of the appeal from the judgment of the probate court.

In *State v. Ossweiler*, 111 Kan. 358, 207 Pac. 832, this court discussed the situation as it existed prior to the adoption of any statute and pointed out the procedure which had been laid down in the case of *In re Wright*, 74 Kan. 409, 89 Pac. 678. Subsequent to the decision in the Wright case the legislature in 1911 adopted what is now R. S. 62-1531, reading as follows:

"Whenever any person under indictment or information, and before or during the trial thereon, and before verdict is rendered, shall be found by the court in which such indictment or information is filed, or by a commission or another jury impaneled for the purpose of trying such question, to be insane, an idiot or an imbecile and unable to comprehend his position, and to make his defense, the court shall forthwith commit him to the state asylum for the dangerous insane for safe-keeping and treatment; and such person shall be received and cared for at said institution, until he shall recover, when he shall be returned to the court from which he was received to be placed on trial upon said indictment or information."

In 1919 the legislature adopted R. S. 39-237, which provides:

"Whenever in a court of record, during the hearing of any person charged with a misdemeanor or crime, it shall be made to appear to the court that the person is feeble-minded, the court shall summarily remand such person to the probate court of the county for examination under the provisions of this act."

After pointing out these sections of the statute the court concluded in the Ossweiler case, *supra*, as follows:

"As indicated in the Wright case, it made no difference that the showing of present insanity was made in affidavits supporting an application for continu-

ance only. When the showing was presented it was the court's duty to find out if the defendant was in fit mental condition to be tried, whether counsel for either side made application for the inquiry or not. In effect, the law made the application for the defendant and, however the attorneys might fence about the matter, the court was not authorized to proceed with the trial on the merits until it had ascertained, by one of the statutory methods, whether the defendant was capable of making a rational defense. Trial on the merits is, of course, no substitute for the preliminary investigation. The question of capacity to commit crime on August 1 bears no relation to the question of capacity on December 15 following to defend against a charge of crime." (p. 367.)

As hereinbefore stated, counsel for defendant in his opening statement challenged the court's attention, not only to the fact that a defense would be made that at the time of the commission of the alleged crime the defendant was then so feeble-minded as to be unable to appreciate the consequences of her act, but that at the time of the trial the defendant was so feeble-minded as to be incapable of defending herself or of assisting counsel to make her defense. In the instant case the jury had already been impaneled when counsel for defendant brought the situation to the attention of the court. The court proceeded with the taking of testimony but, after hearing two witnesses, remanded the defendant to the probate court in accordance with R. S. 39-237 in order to determine the then state of defendant's mind. The claim having been made by counsel for defendant that she was at the time of the trial a feeble-minded person, the court proceeded under the statute relating to feeble-minded persons. (R. S. 39-237.)

The procedure in this respect was proper. In the Ossweiler case and again in the case of *State v. Detar,* 125 Kan. 218, 263 Pac. 1071, this court has tried to make plain what the procedure should be in such cases. In the latter case it was said:

"As we have seen, it was brought to the attention of the court informally by the defendant [by questions asked upon the examination of the jury] and formally by the state [by motion asking the court to order an examination into the defendant's sanity]. The manner in which the necessity for an inquiry is raised as to the present insanity is not of much importance. It may be ordered on formal application or where no application is made, when the court learns from observation, reasonable claim or credible source, that there is a real doubt of defendant's mental condition to comprehend his situation or make his defense." (p. 221.)

Since the case at bar is one in which the claim is based solely upon the mental status of a person who was alleged to be feeble-minded,

in a strict sense the only statute now before the court for consideration is R. S. 39-237. However, since there is apparently a difference between the procedure indicated in this statute as compared with R. S. 62-1531, we have deemed it proper to discuss both in this opinion and to point out the distinction in the method to be followed.

Under R. S. 39-237 it is the duty of an attorney who is representing a client whom he has reason to believe is feeble-minded at the time of the trial, to call the matter to the attention of the trial court as soon as the case is called for trial. The statute uses the language "during the hearing." Therefore, as soon as the case is called for trial and before the jury is called into the box for examination, counsel for defendant should, in the discharge of his duty as an officer of the court, call the situation to the attention of the trial court. This can be done by oral statement, affidavit, motion or any other suitable manner that will properly bring before the court the claim that the defendant is feeble-minded. If counsel for the state has any information that the accused is feeble-minded it becomes his duty to do likewise. The trial court should be fully and promptly advised upon such matters prior to the time the jury is called into the box so that the preliminary investigation contemplated by the statute can be made and the matter disposed of in an orderly manner before the jury is sworn and before the taking of testimony is begun. In such a case the first thing to be determined is the mental status of the defendant. This must be determined before the court can proceed with the trial of a criminal charge. As soon as the trial court is informed of the claim of feeble-mindedness after the case is called for trial it then becomes his imperative duty to act promptly. If, however, the situation does not develop until after the trial is under way, or if for any reason the matter is not called to the court's attention until after the trial has begun, it then becomes the duty of the court, whenever its attention is challenged to the matter, to proceed to remand the accused to the probate court. If necessary to stop the trial, as was done in this case, it must be done. There is then no other alternative.

As to the procedure under R. S. 62-1531, that statute uses the language:

"Whenever any person under indictment or information, and before or during the trial thereon, and before verdict is rendered . . ."

It is clear that under that section, if claim is to be made on behalf of the accused that he is afflicted by any of the types of insanity or mental disability covered by that statute, the information concerning his claim should be promptly brought to the attention of the trial court by counsel for defendant or counsel for the state at any time after the indictment or information has been filed. The statute contemplates that as soon as the indictment or information has been filed against the accused "and before . . . the trial thereon" the matter of the alleged claim of insanity should be promptly brought before the trial court. What we have said as to the duty of counsel and the court as to promptness of action under the statute relating to feeble-mindedness applies also to the conduct of proceedings under R. S. 62-1532. In all cases wherever possible, therefore, under this latter statute the information should be brought to the attention of the trial court promptly before the trial has been begun and as soon as possible after the indictment or information has been filed. If, however, knowledge of the insanity of the accused does not develop until after the trial has begun, or if after the beginning of the trial the accused should become insane, or if for any other reason the matter could not have been called to the attention of the trial court before beginning of the trial, then it becomes the duty of counsel after the trial has begun and at any time before the verdict is rendered, to bring the matter to the attention of the trial court, and the duty for prompt action then rests upon the court. Under this latter section it does not matter in what form the information is placed before the court. It may be by oral statement of counsel, by affidavit or motion or in any other suitable manner which will properly bring before the court the claim of insanity made by, or in behalf of, defendant.

We will now consider defendant's contention that after the hearing in the probate court her appeal to the district court should have been disposed of before proceeding with the trial of the criminal case.

The statute (R. S. 39-237) provides that "the court shall summarily remand such person to the probate court." In other words, it is contemplated that the trial judge shall act promptly and send the person to the probate court for trial and for hearing according to the provisions of that act. (Laws 1919, ch. 299, section 2 of which is R. S. 39-237.)

The appellant calls attention to R. S. 39-234, which provides that—

"An appeal may be taken to the district court from any order or decision of the probate court in any matter arising under the provisions of this act upon the same terms and conditions as are appeals under the provisions of the act respecting executors and administrators and the settlement of the estate of deceased persons."

Did the defendant have a right of appeal from the judgment of the probate court finding her not to be feeble-minded? The issue for determination in the examination conducted before the probate court was whether she was or was not feeble-minded. So far as the proceeding before the probate court was concerned it was not trying the issues in the criminal case. It was not concerned with her fortunes there. In order to be adverse to her the decision in the probate court would necessarily have had to be one finding her to be a feeble-minded person. Surely she could not have been aggrieved by a decision of that court made in her favor on the question of feeble-mindedness. The general rules governing the right of an appeal are stated in 3 C. J. 629, sec. 491, as follows:

"Besides having an interest in the subject matter of the suit, it is necessary, in order to maintain an appeal or writ of error, that appellant or plaintiff in error shall be injuriously affected or aggrieved by the judgment, order, or decree complained of, so that one cannot appeal from a decision, however erroneous, which does not affect his substantial rights. In many states this rule has been expressly declared by statutes allowing an appeal to be taken by any 'party aggrieved,' or any 'person aggrieved,' or from an order 'affecting a substantial right.' A party, therefore, cannot appeal from a decision which is correct so far as his interests are concerned, or which does not affect his interests, however erroneous and prejudicial it may be to the rights and interests of some other party or person, unless he is the legal representative of such other person."

In *Craft v. Bent*, 8 Kan. 328, it was held:

"Only a party affected by error in a decree can obtain a reversal on account thereof."

See, also, *Payne v. National Bank*, 16 Kan. 147; *Larimore v. Parker*, 109 Kan. 66, 197 Pac. 1118.

It is to be observed that under the provisions of R. S. 39-234 appeals are to be allowed as are appeals under the act "respecting executors and administrators and the settlement of the estate of deceased persons." Turning to the statutes governing such appeals, we find R. S. 22-1103, which provides:

"The applicant for such appeal, his agent or attorney, shall file an affidavit that the appeal is not taken for the purpose of vexation or delay, but because

the affiant believes that the appellant is aggrieved by the decision of the court."

Therefore, considering R. S. 39-234 and R. S. 22-1103 together, as must necessarily be done to determine the procedure in taking an appeal, it is clear that the legislature intended to provide a right of appeal only for an aggrieved party. To permit a party to appeal as a matter of right, even if the judgment is in his favor and he is in no way prejudiced or aggrieved, would be ridiculous. A proper administration of justice makes no such procedure necessary or advisable. Can it be said that defendant was "aggrieved" by the result of the proceeding in the probate court? The hearing there terminated·with a decision in favor of her mentality. She could not have been aggrieved thereby so far as the decision of the probate court is concerned. The fact that she might be prejudiced by being obliged to defend herself in the criminal proceeding does not furnish a sufficient basis for a showing that she was aggrieved by the decision of the probate court. Furthermore, R. S. 39-237 provides "whenever . . . during the hearing . . ." The legislature intended to prevent any miscarriage of justice by providing for such an emergency as arose in this case. It had in contemplation the interruption of the trial to determine whether or not the defendant "is feeble-minded." It did not see fit to provide expressly for an appeal. What it had in mind, no doubt, was just what was done in the case at bar, namely, that when the attention of the trial court is challenged to the situation, the trial should stop and the defendant be promptly remanded for determination of the question of mentality. It follows logically that if the probate court finds a person is feeble-minded, jurisdiction of the person is retained for the purpose of making disposition of the feeble-minded person as contemplated in R. S. 39-238. It likewise follows that if the probate court determines the person is not feeble-minded then the decision should not act as a discharge of the accused, but the judgment of the probate court should be reported back to the district court, and trial of the criminal case should then proceed. We conclude, therefore, that the defendant was not aggrieved by the decision of the probate court in her favor and was not entitled to take an appeal from the decision. The district court did not err in failing to proceed to try out the appeal from the probate court.

The decision of the probate court was reported back to the trial court. He, of his own motion, held a hearing on the mental status

of the defendant. From this hearing he reached the same conclusion as had been reached by the probate court. This hearing granted by the trial court on its own motion was not necessary and is not contemplated by the statute, but it was a step taken by the court in its desire to accord the defendant every possible protection. The court showed a proper concern that no person of feeble mind should be put to trial on a serious charge. There was nothing prejudicial to the defendant in this action. While the procedure was unnecessary, we feel that under the circumstances of this case the trial court should be commended for the care and precaution it took that defendant be treated fairly and justly, and be not deprived of any of her rights under the law. The issue of the mental status of the defendant was again submitted to the jury in the trial of the criminal case. This was done under proper instructions given by the court. So in all, the mental status of defendant was passed upon three times by triers of fact. Any one of these could have found her feeble-minded, but none of them did so.

While no complaint of error is made upon the fact that a five-days' notice was required to be given the defendant, we deem it advisable to discuss that feature of this case. R. S. 39-237 is section 2 of chapter 299 of the Laws of 1919. The act was supplemental to the laws then in existence relating to feeble-minded persons. It was intended by the legislature to cover certain contingencies not provided for in the prior laws and to provide a more expeditious method of handling cases relating to feeble-minded persons. Section 1 of that act is R. S. 39-236, and specifically refers to proceedings arising under the prior laws. Section 2 makes no such reference, but declares the procedure upon a contingency not theretofore covered by any statute, and provides: "The court shall summarily remand such person to the probate court of the county for examination under the provisions of this act." The words "provisions of this act" related to the law then being enacted, namely chapter 299 of the Laws of 1919. Section 2 of that act did not provide that such a person should be remanded for a hearing in accordance with the procedure as it existed in the prior law, but "under the provisions of this act." An order made "during the hearing," as provided in R. S. 39-237, naturally contemplates that the defendant and his counsel have notice of what takes place at the hearing; that they have notice of the order of the court remanding the person to the

probate court. The legislature did not intend that in proceedings initiated under R. S. 39-237 the five-days' notice provided in R. S. 39-202 should be given. It provided for a summary proceeding— one which would afford an examination "under the provisions of this act." (That is, the act of 1919 as provided in section 1 thereof.) We hold, therefore, that the five-days' notice, as provided in R. S. 39-202 is not required to be given in proceedings which arise under R. S. 39-237.

The defendant complains that the court erred in permitting the jury to separate for one week during the time the proceedings were being had in the probate court, and calls attention to the fact that this was done over the objection of both the state and the defendant. Counsel for defendant also say that the case was bitterly fought on both sides; that there was great interest taken in it by the various witnesses for the state and that the record shows feeling against the defendant.

In *State v. Haines,* 128 Kan. 475, 278 Pac. 767, it was contended on the appeal that the court erred in permitting the jury to separate over Sunday, after the case had been submitted to them, and in that case it was urged "that public sentiment was very high and it was prejudicial to the interest of said defendant to permit said jury to separate." In discussing that contention the court said:

"Other than the foregoing statement, there is nothing to show that there was any excitement over the killing of Pool or any prejudice against the defendant. Why there should have been is not apparent. The court, in overruling the motion for a new trial, must have found contrary to the contention of the defendant. No prejudice to him appears to have resulted from the separation of the jury." (p. 480.)

In the case at bar there is no prejudice shown to the defendant. The court could not under the circumstances discharge the jury while the proceedings were pending in the probate court, because the jury had already been sworn and the trial begun and the defendant had been placed in jeopardy. If the jury had been discharged and an attempt made later to impanel another jury a plea of former jeopardy would have been good and it would have been necessary to discharge the defendant. It appears from the record that the court did carefully admonish the jury at the time of separation.

Counsel for defendant call our attention to the case of *State v. Burton,* 65 Kan. 704, 70 Pac. 640, in which this court said:

"In our state the law allows a separation of the jury, with the permission

and under proper admonition of the court, until a final submission of the case. There are cases where the court in its discretion may well order the jury to be kept together, and away from the excitement and prejudices of the community, from the beginning of the trial. If there is danger that the enemies or friends of the accused will endeavor to reach and influence the jury, or that the jurors, in commingling with the public during the trial, will be exposed to improper extraneous influences or be affected by the passions and prejudices existing outside the court room, it is the duty of the court to keep the jury together under the restraining supervision of an officer and beyond the reach of the outside parties and influences." (p. 706.)

It is not our intention to relax the rule of the Burton case. In serious criminal cases where there is strong feeling in the community against the defendant the trial court should take every precaution to guard against any improper influence being exerted upon the jury. Every possible safeguard and protection should be thrown around the defendant to insure his having a fair trial. In such cases it is highly desirable that newspapers be kept from the jurors in order that they try the defendant only upon the evidence introduced in court and not upon inaccurate or colored accounts thereof which sometimes appear in news stories giving accounts of a trial. However, no hard-and-fast rule can be laid down by this court as to just when the jury should or should not be permitted to separate. It is a matter which must be left to the sound discretion of the trial court. In the case at bar the record does not show any intense feeling against the defendant in the community, nor is there anything to indicate that she was in anywise prejudiced by the action of the court in permitting the jury to separate. We cannot see, therefore, that the court abused its discretion and do not find that its conduct of the trial in this respect was erroneous.

Several specifications of error with reference to the admission of testimony, and as to giving and refusing of instructions, are urged by the defendant. We have examined these carefully and do not find that any of the points urged constitute error in the trial.

The judgment is affirmed.