No. 36,598

The State of Kansas, *Appellee*, v. Jack C. Collins, *Appellant*.

(174 P. 2d 126)

Opinion filed November 9, 1946.

*Don Shaffer,* of Hutchinson, argued the cause, and *Abraham Weinlood,* of Hutchinson, was with him on the briefs for the appellant.

*Harry H. Dunn,* county attorney, argued the cause, and *A. B. Mitchell,* at-

torney, general, and *Fred C. Preble,* deputy county attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: The defendant, Jack C. Collins, was convicted of felonious assault on one Everett Vernon Little with intent to kill under the provisions of G. S. 1935, 21-431, and appeals.

The first error charged is the failure of the trial court to make an inquiry concerning appellant's sanity before or during the trial. The date of the alleged offense was October 31, 1945. The trial began January 14, 1946, and ended January 16th.

Prior to the trial appellant's counsel requested a continuance, which was denied. Neither the length of the requested continuance nor the alleged grounds therefor are set out. In support of the motion or request appellant's witness, Dr. Harry E. Blasdel, on January 10, 1946, testified, in substance: He had been treating defendant since July, 1943, for tertiary stage of syphilis; defendant was in a highly nervous state and he (the doctor) wished to give him a spinal puncture in order to determine the nature or character of future treatment; a man in defendant's condition without proper treatment was liable to crack up at any time, particularly with the worry of a case such as this on his mind; the puncture would be the logical thing to do at this stage of treatment; defendant had been hard to handle; he had tried for two years to induce defendant to consent to the making of the puncture.

In the course of that testimony the court asked the doctor the following question and received this answer:

"Do you think it would be very injurious to Mr. Collins if you would put off the puncture for a week? A. No, sir, not at all."

In commenting on the motion for continuance the court said:

"I can't see why it is necessary at this time, after the Doctor here has been treating him for two years, why it is necessary to put the trial off. A week from today he will be through with the trial and he can have the spinal puncture then. The Doctor says it wouldn't be injurious to put it off a week. In other words, it will be just from Monday until the following Thursday; at the very least, it will be just postponing the spinal puncture three days, and according to the Doctor's testimony, I don't think that three days will make very much difference."

The foregoing constitutes all that transpired on the hearing for a continuance. Failure to grant the continuance is not one of the specifications of error. Appellant relies on no other testimony touch-

ing his condition at the time of the hearing of the motion for a continuance or during the trial. While this is the only testimony with respect to appellant's condition prior to trial there was testimony introduced during the trial which tended to show appellant's condition on the night of and immediately after he had assaulted Everett Vernon Little, approximately two and one-half months prior to the trial. Apellant testified:

"Q. Now, on the night,—at the present time and at more particularly on the night of October 31, 1945, what was the condition of your health, Mr. Collins? A. Well, it was very bad.

"Q. Have you had any attacks of, paralysis attacks, locomotor ataxia, anything of the kind? A. Three.

"Q. Before that time? A. Before that time.

"Q. How does that affect *your body, your equilibrium?* A. It causes a loss of the matter of balance; that is what the doctor calls it." (Our italics.)

Appellant's witness, a minister and mayor of the city of Hutchinson, testified concerning appellant's condition after he had assaulted Little, in substance, as follows:

He was riding in a police car on that night and picked up a radio report of the shooting at the pool hall; he went there; he had met Collins frequently for several years and considered him usually a rather interesting conversationalist who talked sensibly; Collins usually had a liquor breath and he did have that evening, but he appeared not to be drunk then; Collins was dazed, hysterical and had a crazy expression on his face; the witness saw Collins later at the police station; Collins laughed hysterically and did not speak coherently; he was muttering, cackled like a "bunch of hens," laughed a great deal, a peculiar type of hysterical laughter; he had a crazy, peculiar stare and was not rational at that time in the witness's opinion.

Doctor Walker, the city physician, and appellant's witness, testified concerning appellant's condition at the same time and place, in substance, as follows:

He treated Collins the night of the shooting for wounds on the back top part of the head; there were two severe cuts not made by a sharp instrument; Collins' head was bleeding and his head and clothing were fairly well saturated with blood; five or six clamps were used on the wounds and the wounds dressed; Collins seemed jovial and his talk was not remorseful; he seemed to talk a little more than an ordinary person would under the circumstances.

On cross-examination the same doctor was asked and answered as follows:

"Q. He acted rational, didn't he?  A. What?
"Q. He was rational?  A. Oh, yes."

Did the trial court commit reversible error in failing to make an inquiry on its own initiative concerning appellant's sanity in the light of the facts developed prior to or during the trial? No claim was made in the trial court appellant was insane or incapable of making an adequate defense. Neither appellant nor his counsel requested the court to make an inquiry for the purpose of determining capacity or mental condition. It appears a request was made for a continuance of the trial only for the purpose of making a spinal puncture. The doctor's stated purpose for desiring to make the puncture was to determine the nature and character of proper future treatment. Appellant's physician had been endeavoring for two years without success to persuade appellant such a puncture should be made. The doctor testified the puncture could be made as well after the trial as before. The purpose of the puncture, therefore, was not to eliminate a condition which prevented appellant from making a proper defense.

We need not pursue the order denying a continuance as there is no appeal from that ruling. This does not mean, however, that we should not consider the evidence adduced in connection with the hearing for a continuance together with all other facts disclosed during the trial which may cast light on the subject of appellant's sanity or capacity to make a proper defense. We shall consider all the pertinent facts.

The testimony of appellant's witnesses during the trial, previously quoted, did not relate to appellant's condition at the time of trial but to his condition on the night after his assault on Little which was approximately two and one-half months before the trial. There was nothing in the doctor's testimony to indicate appellant's incapacity at that time. In fact, he testified appellant was rational at the time. The trial court was, of course, obliged to consider the minister-mayor's testimony in connection with other testimony in the case which disclosed what had transpired previously that night to affect appellant's condition. That testimony disclosed: Appellant was a professional gambler; he had $6,000 on his person and carried a gun; appellant, Little and others, had been shooting dice in appellant's hotel room in Hutchinson prior to appellant's as-

sault on Little at the Smoke House; appellant had won considerable money from Little and from at least one other participant; they insisted on having the dice "miked" which disclosed the dice were crooked; Little then grabbed appellant's revolver which was lying on a dresser, and struck appellant on the head with it, resulting in the head wounds the city physician described; appellant returned the money he had won and, it appears, a little more; the participants then proceeded to do some social drinking, shook hands two or three times and everybody seemed to be happy; Little left for the Smoke House; the shooting of Little occurred approximately an hour later that night at the Smoke House.

Manifestly, the trial court had a right to consider whether appellant's later condition at the police station that night, as described by the minister-mayor, was attributable to injuries to appellant's head received at the hotel room or to the drinking or both.

In fairness to the trial court it was never intimated by anyone before or during the trial that appellant's condition at the police station on the night of the shooting, as described by the minister-mayor, was indicative of or suggested insanity. There was not the remotest claim of insanity at any time prior to or during the trial. It is not now contended there is anything in the record to indicate appellant was insane or that he lacked capacity for any reason during the trial to make an adequate defense. Nor was any kind of instruction on that subject requested.

G. S. 1935, 39-237, pertaining to an inquiry on the trial of a feeble-minded person, has been repealed. (Laws 1939, ch. 180, § 280.) G. S. 1935, 62-1531, provides:

"Whenever any person under indictment or information, and before or during the trial thereon, and before verdict is rendered, shall be found by the court in which such indictment or information is filed, or by a commission or another jury empaneled for the purpose of trying such question, to be insane, an idiot or an imbecile and unable to comprehend his position, and to make his defense, the court shall forthwith commit him to the state asylum for the dangerous insane for safekeeping and treatment; and such person shall be received and cared for at the said institution until he shall recover, when he shall be returned to the court from which he was received to be placed on trial upon said indictment or information."

This court had occasion to construe and apply both statutes before the repeal of the first-cited statute and also to pass upon the rights of an insane person without regard to statute. It is committed to certain well-established principles pertaining to the subject

before us. Manifestly, it is the policy of the law not to try persons while they are insane. (*State v. Badders,* 141 Kan. 683, 42 P. 2d 943.) Whenever counsel for defendant or the state become possessed of knowledge of defendant's lack of mental capacity to comprehend his situation or to properly make his defense, it becomes their duty to promptly bring the matter to the attention of the court. (*State v. Brotherton,* 131 Kan. 295, 302, 291 Pac. 954.)

In the Badders case it was also said:

"When during a trial it is brought out by the testimony of any witness, or is called to the attention of the court by anyone connected with the case, that the defendant then on trial is insane, or that there is a serious question as to his sanity at that time, it is the duty of the court to stop the trial and make an inquiry concerning that matter." (p. 686.)

In *State v. Detar,* 125 Kan. 218, 263 Pac. 1071, we stated:

"As we have seen, it was brought to the attention of the court informally by the defendant and formally by the state. The manner in which the necessity for an inquiry is raised as to the present insanity is not of much importance. It may be ordered on formal application or where no application is made, when the court learns from observation, reasonable claim or credible source, that there is a real doubt of defendant's mental condition to comprehend his situation or make his defense." (p. 221.)

When a proper showing of insanity is made the law in effect makes the application for an inquiry for the defendant. No formal application is necessary under such circumstances. (*In re Wright,* 74 Kan. 406, 86 Pac. 460; *State v. Ossweiler,* 111 Kan. 358, 207 Pac. 832; *State v. Brotherton,* supra.)

From these salutary and humane principles this court has no desire to detract. They are justly designed for the protection of persons to be tried for crimes when they are incapacitated to properly defend themselves. On the other hand, they are not intended to furnish a technical means of nullifying just verdicts solemnly reached by judicial process. In order to reverse the trial court on the instant complaint we would be obliged to hold, as a matter of law, the record compelled the trial court to entertain a real doubt with respect to appellant's sanity or capacity to make a proper defense. The question of such doubt addressed itself to the sound discretion of the trial court. It was the trial court in whose mind a real doubt of sanity or mental capacity to defend had to be created. (23 C. J. S., Criminal Law, § 940, p. 235; *The People v. Hart,* 333 Ill. 169, 173, 174, 164 N. E. 156; *Dietz v. State,* 149 Wis. 462, 480,

136 N. W. 166; *State v. Peterson,* 24 Mont. 81, 86, 60 Pac. 809; *Southworth v. State,* 98 Fla. 1184, 1190, 125 So. 345.)

We think under all the circumstances here presented it would be somewhat stronghanded to conclude the trial court abused sound judicial discretion in failing to make an inquiry. While this court might not be willing to go as far in some respects as the learned courts of the jurisdictions last above cited we are satisfied this judgment should not be reversed on the ground the trial court was compelled to make an inquiry concerning appellant's sanity solely on its own initiative. This is doubly true in view of the fact appellant's counsel does not even now contend appellant was insane or incapable of conducting his defense.

Other alleged errors pertain to the exclusion or admission of evidence. Complaint is made appellant was unduly restricted in his cross-examination of the witness Little whom appellant had assaulted. The testimony in chief of that witness was limited to what occurred at the Smoke House where the shooting occurred. That testimony indicated appellant came into the Smoke House with a .45 caliber pistol looking for Little at approximately eleven o'clock in the evening, located him seated at a card table and that while Little was so seated appellant approached from the side and shot him through the body. Appellant shot a second time but that bullet did not strike its mark. Little testified he did not notice Collins until about the time he was shot, that his only move was to turn his head before he was shot and that appellant said:

"Here is you, you son-of-a-bitch, and here I am, and he shot."

Appellant's contention was he had shot Little in self-defense because he feared Little. By cross-examination of the witness Little on matters not covered by the witness's testimony in chief appellant sought to elicit testimony concerning what had occurred in appellant's hotel room previously that night. Obviously appellant endeavored to establish his defense by such cross-examination and it was not error to exclude the testimony. Appellant's version of what previously had occurred in the hotel room was later fully developed in his own testimony with the result that the court and jury were fully advised of all the essential facts.

Complaint is made of the ruling excluding evidence on direct examination of appellant's doctor touching appellant's condition the day after the shooting. The stated purpose of the testimony was to show the effect of the injuries Little had inflicted on appellant by

striking him on the head with the revolver the night before and to show appellant feared Little. The trial court advised it would permit appellant to show anything that transpired on the night of the shooting but refused to admit testimony touching appellant's condition the following day for the reason that his condition the next day might have been augmented by other things. As previously indicated the doctor did testify concerning appellant's condition the previous evening after appellant had been struck by Little and stated that appellant was rational. In view of the record we will not disturb the ruling. Obviously whatever appellant may have told his doctor the following day, if anything, about fearing Little would not have been admissible.

It is urged the trial court erred in admitting state's rebuttal evidence. On cross-examination appellant, in part, testified in substance: He intended to shoot or he would not have pulled the trigger, but he did not say he intended to kill him; he had no recollection of what he said at the police station. In rebuttal to that evidence the state introduced the testimony of a number of officers who saw and heard appellant at the police station after the shooting. John Robinson testified in substance: He was employed in the police department of the city of Hutchinson and was on duty the night in question; he had taken Collins to the police station from the Smoke House after the shooting; he and some other detectives had had a conversation with Collins at the station; Collins had been permitted to call his attorney; Collins voluntarily stated that no one was going to "conk" him on his head with his own gun, as Little had, and get by with it; he had taken a drink and at about eleven o'clock went out to look for Little, whose name he did not know at the time, and had gone to the pool hall; he admitted he shot the boy; he stated he had gone out with the intention of killing Little.

The witness, H. J. Van Kuren, testified in substance: He was assistant chief of the fire department of the city of Hutchinson and was in the police station the night Collins was brought in; Collins stated nobody could hit him over his head with his own gun and live; Collins stated he just walked up and shot him. The testimony of the witnesses was proper rebuttal to appellant's evidence on self-defense.

Appellant contends the court erroneously permitted the witness Little to testify on rebuttal he had told appellant before leaving the hotel that he was going to the Smoke House. The testimony was

properly admitted in view of appellant's claim he shot Little in self-defense. Appellant had testified he went to the Smoke House from the hotel to find another person and that he did not know where Little was.

The jury was entitled to determine from the conflicting evidence whether appellant knew where he could find Little and for what purpose he went to the Smoke House.

It is also urged the court erred in failing to permit appellant on his direct examination to state whether he had been in the habit of going to the Smoke House during the month of October and whether he had been there the day before the shooting. The court did permit appellant to testify he had been to the Smoke House several times before the day in question. No showing was made during the trial or on the motion for a new trial as to what appellant's answers to the questions would have been had he been permitted to answer them. It follows appellant cannot legally predicate error on the ruling. Moreover, appellant had frankly confessed that since 1920 he had been mostly a gambler with dice. No doubt the jury knew he would be in the habit of frequenting gambling places.

Another error urged is the sustaining of the state's objection to a question on cross-examination of the witness Little. Appellant's counsel asked Little whether he had not filed a suit against J. C. Collins et al. in the district court of Reno county on November 13, 1945, for $10,000. The state objected on the ground the question was incompetent, irrelevant and immaterial, not tending to prove or disprove any issue in the case. Appellant also offered in evidence the papers in the purported case. Appellant's abstract does not disclose the nature of the state's objection to this offer. The objection was sustained. Appellant admits the transcript does not show what those papers were. Appellant now tells us the files offered included a petition of Everett Little asking damages in the amount of $10,000 from appellant for the shooting of Little, the transaction out of which this criminal case arose. The last statement is outside the record. The files offered are not presented here. Appellant says the files *included* the petition in that case. What else they may have included to make them inadmissible, if anything, we have no way of knowing. Appellee states that since appellant has gone outside the record it will do likewise and advise us the civil action has been settled by judgment for Little in the sum of $2,500. Appellee argues if a new trial were ordered Little could not

now be cross-examined on that question and that the record would, if admissible, tend to constitute an admission of appellant's guilt.

Manifestly, this court will not base its opinion on facts not properly brought before us by either party. Generally, cross-examination of a witness for the purpose of disclosing his interest in the action, his hostile feeling, and the extent thereof is proper. It is the province of the jury to consider such facts in order to determine the weight and credibility it will accord to all or to any portion of a witness' testimony. (See *State v. Krum*, 32 Kan. 372, 4 Pac. 621; *State v. Collins*, 33 Kan. 77, 5 Pac. 368; *State v. Tawney*, 81 Kan. 162, 105 Pac. 218; all involving a similar question.)

Notwithstanding the condition of the record before us with respect to the sustaining of the objection to the cross-examination let us assume the evidence should have been admitted. Does it necessarily follow it constituted reversible error to exclude it? We have held otherwise under rather similar circumstances. (*State v. McLemore*, 99 Kan. 777, 164 Pac. 161.) It must always be remembered every error does not necessarily affect substantial rights. Our statute, G. S. 1935, 62-1718, directs:

"On an appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

Numerous cases in which this statutory mandate has been applied are collected under the statute. On the record before us it is not made to appear the ruling probably prejudiced appellant's substantial rights. On the contrary, it more reasonably appears it probably did not. Appellee informs us Little did not sign the complaint on which appellant was prosecuted. Of course, he was the principal witness. He had been shot. The bullet of a .45 caliber pistol had passed entirely through his body. It is utterly inconceivable the jury would not know that Little had some real feeling about and interest in the outcome of this prosecution. Naturally the jury would consider that fact in its deliberations. Moreover, in the light of the testimony of various neutral eyewitnesses, in addition to the testimony of witnesses previously narrated, who testified relative to the deliberate and cold-blooded manner in which this crime was committed, we have no hesitancy in saying it is highly improbable the feeling and interest of Little in a conviction would have been materially increased, if at all, by evidence of a civil suit against appellant. After careful review and consideration of the record this

court does not believe it would be justified in concluding the substantial rights of appellant probably were prejudiced by the exclusion of the evidence in question.

We think the judgment should be affirmed. It is so ordered.

SMITH, J., not participating.