No. 40,395

THE STATE OF KANSAS, *Appellee,* v. PAUL CUSHINBERRY, JR., *Appellant.*

(304 P. 2d 561)

filed December 8, 1956.

*P. A. Townsend,* of Topeka, argued the cause and was on the brief for the appellant.

*John S. May,* County Attorney, Atchison, argued the cause, and *John Anderson, Jr.,* Attorney General, of Topeka, and *Robert F. Duncan,* Assistant County Attorney, of Atchison, were with him on the brief for the appellee.

The opinion of the court was delivered by

THIELE, J.: Paul Cushinberry, Jr., was tried on an information charging him with an attempt to commit murder in the first degree. The jury returned a verdict finding him guilty, and his motion for a new trial having been denied, he was sentenced to confinement in the state penitentiary. In due time he perfected his appeal to this court, specifying error in the particulars later discussed.

A summary review of the evidence is necessary in view of the contentions of the appellant.

Ira Coleman testified he was a night watchman at a quarry and at 12:00 a. m. on February 17, 1956, he went on duty at the watchman's shanty; that he went outside to check gates and when he returned he saw Cushinberry standing about seven feet away with a gun; that Cushinberry said for him not to move; that he was going to kill him; that he was paid to come down and kill him. Coleman started to back away. Cushinberry came toward him. He grabbed Cushinberry and he wrestled with Cushinberry and got the gun. Cushinberry, who had fallen, got up and started to run, ignored a call to stop, and Coleman pulled the trigger and shot Cushinberry and held him until the police and sheriff arrived. Over objection the matters were too remote, Coleman was permitted to testify concerning some dealings had in 1950 concerning the witness's proposed purchase of some whiskey from Cushinberry, and allegedly stolen from a liquor store in St. Joseph, Missouri; that he notified the police chief in the city of Atchison, and was advised to buy the whiskey. No sale was ever made. The witness, on cross-examination, testified he had had some difficulties with a man named Turner, who was engaged in gambling and bootlegging activities and who was convicted of a felony for promoting a lottery. On redirect examination

Coleman stated his difficulty with Turner was because his wife left him for Turner.

Michael Wood testified he was the chief of police and conducted an investigation of the altercation. He stated that on February 17, 1956, at 9:00 a. m. he asked Cushinberry what happened to him and objection was made that no proper foundation was laid for his testimony. Some argument, not set forth in the abstract or counter-abstract, was had, and the witness was then permitted to testify he asked Cushinberry what happened and that Cushinberry answered he got his brother's gun and some ammunition and drove to the quarry, got out of the car and went to the watchman's shanty where he knew Coleman would come at midnight to go to work; that he had an old grudge against Coleman; that he waited until the other watchman left and then got out of his own car and proceeded toward Coleman with the intention of killing Coleman; that the gun misfired and Coleman took the gun away from him and shot him. The witness further testified that his conversation with Cushinberry was at the hospital where Cushinberry was being treated, and that what Cushinberry told him was not the result of question and answer; that witness asked Cushinberry what had happened and Cushinberry repeated the story to which he had testified. At the conclusion of the direct examination appellant moved that all of Wood's testimony be stricken for the reason it related to a confession; that nothing had been shown it was voluntary; it had not been shown that Cushinberry was advised as to his right to counsel or that his statement might be used against him. Statements made by counsel, and cross-examination, developed that when the above took place, no charge had been filed against Cushinberry and he had not been and was not then arrested. Kurtz, the sheriff of Atchison county, testified he arrested Cushinberry on the morning of February 21, 1956.

Cushinberry, a witness in his own behalf, testified at length concerning the whiskey selling incident and that he had no animosity against Coleman; that on February 16, 1956, Coleman asked him to get a gun and bring it to the quarry and that he did so; that after the first watchman had gone he had a conversation with Coleman in which Coleman wanted to know what the witness would charge him to kill Turner; that he went to leave and when Coleman grabbed the gun, the witness started to run and Coleman shot him. He further testified that when the chief of police talked to him

he made the statement to the chief of police that he intended to kill Coleman because he wasn't feeling good and wanted to go back to sleep. On cross-examination and over objection of his counsel, Cushinberry was asked about his previous criminal record and that he had been incarcerated at the industrial school, the state reformatory, and the state penitentiary.

Appellant's first contention is that the trial court erred in admitting in evidence the confession made by appellant to the chief of police, without deciding as a preliminary matter whether it was voluntarily made, citing in support, *State v. Seward,* 163 Kan. 136, 181 P. 2d 478. We need not detail all of the facts or reasoning in that case, but it may be distinguished from the case at bar in several important features. First, the defendant there was a boy seventeen years old; second, the confession involved was procured after the defendant had been arrested and while he was in jail and without being permitted to talk with his parents; third, the confession, which contained a direct admission of guilt, was reduced to writing and signed; and fourth, when offered in evidence the trial court refused to permit defendant's counsel to inquire concerning whether the confession was voluntary. In the instant case it is probably a misnomer to say there was any confession. The chief of police was investigating matters concerning the shooting, and inquired of Cushinberry regarding his activities on the night in question and in response Cushinberry told him about the whole affair. At that time Cushinberry was not under arrest nor any duress. And it is significant that testifying later in his own behalf appellant admitted making the statement explaining only that he wasn't feeling good, had lost a lot of sleep and wanted to go back to sleep. Further, when the chief of police was asked to state the conversation, appellant's counsel did not request that he be permitted to interrogate the witness as to whether or not the statements of Cushinberry were freely and voluntarily made. Even though it might be said there was error because the trial court did not require the state, as a preliminary matter, to show that Cushinberry's statement was freely and voluntarily made, and that is not conceded, the error must be regarded as technical and under the circumstances not such as to have affected the substantial rights of the defendant. We must give judgment without regard to the error. (G. S. 1949, 62-1718.)

Appellant's second contention, that the trial court erred in per-

mitting the witness Coleman to testify to the liquor matters in 1950, is based entirely on the proposition that the incident was so remote the evidence had no probative value, and was therefore irrelevant and should have been excluded. Appellant concedes that whether such evidence should have been received ordinarily rests in the discretion of the trial court but says the trial court abused its discretion because the evidence permitted the state to initiate an inquiry as to the character of the defendant as a part of its case in chief. We cannot agree. One of the elements involved in the charge set forth in the information was motive and the state had the burden of establishing it. The mere fact the incidents testified to occurred about five years before the shooting went more to the weight to be accorded the testimony than to its admissibility and the mere fact the testimony may have tended to show Cushinberry was engaged in some unlawful activity, out of which motive to kill may have resulted, is not to be interpreted as an attack on his character. The trial court did not abuse its discretion in its ruling admitting the evidence.

Appellant's third contention is that the trial court erred in requiring appellant, on cross-examination, to answer questions as to his previous arrest, fights, escape from the industrial school and a parole violation. He does not contend he could not be examined as to such matters, but says counsel for the state placed too much emphasis on those matters in cross-examination. The rule in this state is that when a defendant in a criminal action takes the stand as a witness in his own defense, he places his character and credibility in issue and when questioned in good faith he may be cross-examined, for the purpose of impairing his credibility, concerning previous offenses and subjects involving him in degradation and disgrace although they do not pertain to the charge for which he is on trial. See *State v. Osburn*, 171 Kan. 330, 333, 232 P. 2d 451, and the cases cited therein. We have examined the record as abstracted in the light of the above rule and hold the contention of error cannot be sustained.

Appellant's fourth contention is that the trial court erred in not giving a proper instruction to the jury concerning the testimony mentioned above in discussing his third contention. It may be observed that no objection was made to any instruction given the jury, nor was there any request that any other or further instruction be given. Appellant's contention is that the jury should have been

told what application could be made of the testimony and that an instruction given concerning weight and value of testimony and credibility of witnesses was erroneous. At no place in his argument is it pointed out wherein the instruction given was erroneous, and our examination of it discloses that it is a fair statement of the law applicable. In support of his argument appellant cites only *The State v. Pfefferle*, 36 Kan. 90, 12 Pac. 406. That case does not sustain his contention. It was there held:

"A party who desires an instruction upon some particular question not included in the general charge, should request the presiding judge to give the same; but where no such request is made, and the case is fairly presented to the jury, he cannot afterward complain that the instruction was not given."

For a more recent statement of the rule, see *State v. Anderson*, 172 Kan. 402, 241 P. 2d 742. Our examination of the record discloses that under the instructions given with respect to the matter now under consideration, the case was fairly submitted to the jury. The fourth contention of error is untenable.

Appellant's fifth contention is that the trial court erred in its instruction as to murder in the second degree. The argument is limited to a statement that the instruction did not give "a clear definition of murder in the second degree." Just why it was not clear is not pointed out. Our examination of the instruction leads us to conclude it was sufficient.

In a summation made by the appellant our attention is directed to various matters occurring at the trial, and it is argued that the various objections made and errors of which he complains, when examined separately, may be of no importance, but when taken together, disclose he did not have a fair trial. He also complains that the county attorney was guilty of misconduct in persuading him, on cross-examination, to say he was guilty of burglary, and of so arguing to the jury, but that when sentence was to be pronounced the proof showed he had been convicted of grand larceny. We cannot discern from the record as abstracted that the county attorney "persuaded Cushinberry to testify to anything." The abstract states a conclusion that Cushinberry was required to testify he had been convicted of burglary. The counter-abstract discloses Cushinberry was asked "Have you ever been convicted of a felony?" and that he answered "Yes, Sir; I was convicted of burglary." In the face of that record, can it be said that the county attorney, when arguing to the jury, was guilty of misconduct in saying that Cushinberry

454

had been convicted of burglary? The charge of misconduct has no foundation in the record. The record discloses that appellant had a fair trial.

A review of the record as abstracted and an examination of the briefs lead to the conclusion that the judgment of conviction and sentence appealed from should be and it is affirmed.