No. 44,023

State of Kansas, *Appellee,* v. Richard Wheeler, *Appellant.*

(403 P. 2d 1015)

Opinion filed July 10, 1965.

*Harold Pfalzgraf,* of Wellington, argued the cause for appellant.

*Charles E. Watson,* County Attorney, of Wellington, argued the cause, and *Robert C. Londerholm,* Attorney General, and *Charles N. Henson,* Assistant Attorney General, of Topeka, were with him on the briefs for appellee.

The opinion of the court was delivered by

Fatzer, J.: The defendant, Richard Wheeler, was found guilty by a jury of unlawful possession of a pistol pursuant to the provisions of G. S. 1961 Supp., 21-2611 (now K. S. A. 21-2611), and was sentenced to confinement as an habitual criminal.

After the conviction and imposition of sentence, the defendant indicated his desire to appeal. Instead of the court appointing the attorney who tried the case, it appointed The Honorable John A. Potucek to represent the defendant on appeal. Following Mr. Potucek's election as judge of the district court of the twenty-fifth judicial district, Mr. Harold Pfalzgraf consented to argue the case in the Supreme Court as a personal courtesy to Judge Potucek. The abstract and briefs recite the factual situation, and those pertinent to the appeal follow.

On November 21, 1963, police officers acting· on information, apprehended the defendant operating his automobile in an erratic manner. He was arrested for driving while under the influence of intoxicating liquor. A subsequent search disclosed an open bottle in the vehicle and a pistol on his person underneath his belt and shirt.

We need not relate the facts pertaining to the liquor offense, but suffice it to say he entered a plea of guilty and a fine and jail sentence were imposed. There was no appeal from that conviction.

On January 2, 1964, a complaint was filed, charging the defendant with the unlawful possession of a firearm having a barrel less than twelve inches long after having previously been convicted of grand larceny in the state of Oklahoma. (K. S. A. 21-2611.)

At the trial on April 15, 1964, several witnesses testified, but we confine our discussion to the testimony of the defendant. He testified he served ten years in his country's service, part of that time as a tail gunner in the Army Air Force Bomber Group during World War II, and that he was the holder of two Purple Hearts, some air medals and many other citations. He was discharged from the service because of psychological problems and has received some phychiatric treatments. He testified he was an alcoholic and drank to overcome mental anxiety, however, he had drunk only one time since his release from prison in March, 1963. He further testified that he was to make application for treatment at the Larned State Hospital following the serving of the sentence for driving while under the influence of intoxicating liquor.

The defendant acknowledged two prior convictions for felonies, one for grand larceny of an automobile in Oklahoma and another for concealing mortgaged property in Kansas.

After completion of his cross-examination by the state, the following colloquy occurred between the court and the defendant:

"Court: Is this your gun? A. That's the gun I bought, yes, sir.

"Court: Did drinking have anything to do with your carrying this gun? A. Yes, if I hadn't been drinking I wouldn't have had the gun.

"Court: When did you buy the gun? A. I bought it about one o'clock the afternoon of the 21st of November.

"Court: When did you start drinking? A. About ten o'clock that morning. I took my stepdaughter to Wichita and while I was up there I started drinking and I bought this gun.

"Court: You weren't so drunk you didn't know what you were doing, were you? A. I don't think a half pint would make anybody drunk. I think I was in an emotional state,—I couldn't reason with myself."

At the close of all the evidence, the district court instructed the jury in writing and it returned a verdict of guilty as charged.

Following the overruling of his motion for a new trial, the defendant was sentenced under the provisions of the habitual criminal statute (G. S. 1949, 21-107a, now K. S. A. 21-107a) to confinement at hard labor in the Kansas State Penitentiary for a term of not less than fifteen years.

The defendant contends the district court erred in failing to instruct the jury as to the defendant's state of intoxication as affecting his mental capacity at the time of the alleged offense; that it abused its discretion in conducting a cross-examination of the defendant, thereby assuming the position of an advocate, and in failing to stop the proceeding on its own initiative and make inquiry as to the mental condition of the defendant.

In this jurisdiction we follow the established principle of law that a defendant's voluntary intoxication does not relieve or excuse him of responsibility for his acts. (*State v. Guthridge,* 88 Kan. 846, 129 Pac. 1143; *Richardson v. Business Men's Protective Ass'n,* 129 Kan. 700, 284 Pac. 599.)

An intoxication instruction is essential only when intent is a necessary element of the crime. Intoxication may be used to indicate a state of mind whereby an accused, because of his intoxication, is unable to formulate an intent. However, the statute in question (K. S. A. 21-2611) does not require intent as a prerequisite for its application. It merely requires that the accused have a previous conviction for certain specified offenses among which is grand larceny and ownership, possession or control of a pistol having a barrel less than twelve inches long. (K. S. A. 21-2610 and 21-2611.)

In *State v. Anderson,* 172 Kan. 402, 241 P. 2d 742, we fully discussed the district court's function in giving instructions, and said:

"While it is true that it is encumbent upon a trial court to instruct the jury upon all matters of law necessary for their information in giving their verdict (G. S. 1949, 62-1447; *State v. Smith,* 161 Kan. 230, 167 P. 2d 594), a party who desires an instruction upon some particular question not included in the general charge should request that the trial judge give such instruction. Where no such request is made and the case is fairly presented to the jury, he cannot afterwards complain that the instruction was not given. The omission to instruct the jury upon some particular phase of the case for which no request was made is not error. (*Skaer v. American Nat'l Bank,* 126 Kan. 538, 540, 268 Pac. 801, and cases therein cited: *State v. Rook,* 42 Kan. 419, 22 Pac. 626; *State v. Pfefferle,* 36 Kan. 90, 12 Pac. 406; *State v. Jones,* 137 Kan. 273, 20 P. 2d 514; *State v. Nelson,* 68 Kan. 566, 75 Pac. 505.) . . ." (l. c. 406, 407.)

For additional decisions supporting this authority, see: *Jukes v. North American Van Lines, Inc.,* 181 Kan. 12, 23, 309 P. 2d 692; *State v. Cushinberry,* 180 Kan. 448, 452, 304 P. 2d 561; *State v. Inverarity,* 150 Kan. 160, 92 P. 2d 45; *State v. Brown,* 145 Kan. 247, 65 P. 2d 333.

We have examined the district court's instructions to the jury, and while they were general in form, none were erroneous as a matter

of law. The defendant concedes he made no request for an additional instruction with respect to his state of intoxication, nor did he make any objection to the court's instructions to the jury. No error can be predicated upon omission to give any particular instruction when no request therefor was made. (*State v. Jones,* 187 Kan. 496, 357 P. 2d 760, 88 A. L. R. 2d 1269.) Moreover, intoxication had no relationship to the issue before the district court.

The defendant argues that when the district court examined him, it assumed the position of advocate, thereby creating prejudice to his substantial rights by spoken word, facial expression and tone of voice.

This court has consistently followed the rule stated in *State v. Keehn,* 85 Kan. 765, 118 Pac. 851, where it was said:

"The purpose of a trial in a criminal case is to ascertain the truth of the matters charged against the defendant, and it is a part of the business of the trial judge to see that this end is attained. *He is a vital and integral factor in the discovery and elucidation of the facts, and whenever in his judgment the attorneys are not accomplishing the full development of the truth it is not only his right but it is his duty to examine and cross-examine the witnesses.* The presumption is that this liberty will be honorably and impartially exercised in the interest of justice, and in this case it was not abused by the trial judge." (Syl. ¶ 4.) (Emphasis supplied.)

Our later decisions are in accord with this rule. (*State v. Miller,* 127 Kan. 487, 274 Pac. 245; *State v. Jones,* supra.)

Defendant relies upon *State v. Winchester,* 166 Kan. 512, 203 P. 2d 229 and *State v. Bean,* 179 Kan. 373, 295 P. 2d 600, to support his contention. In those cases the district court went far beyond that of the district court in the instant case. In those cases, this court set out their distinguishing features and held an abuse of discretion had occurred.

The colloquy between the district court and defendant clearly indicates the judge was eliciting the truth as to material matters in the furtherance of justice. There is a total absence of improper questions, bias or an attempt to discredit the witness. We find nothing in the record to sustain defendant's contention that the judge sought to assume the role of an advocate, nor does it support defendant's contention that the judge created prejudice by spoken word, facial expression or tone of voice. In *State v. Keehn,* supra, it was said:

". . . The judge will always have a personality of his own which he cannot disguise or conceal. But the only tact he need display is sincerity, and so long as he is sincere he need feel no timidity in the discharging of his public

duty because of the possible tone or inflection of his voice or the play of his features." (1. c. 786, 787.)

It is lastly claimed the district court abused its discretion and erred in failing to stop the proceedings and order an inquiry into the defendant's mental condition. K. S. A. 62-1531, in pertinent part, provides that whenever any person under indictment or information, and before or during trial is found by the court or commission to be insane and unable to comprehend his position and make his defense, the court shall commit him to a state hospital for the dangerous insane until he shall recover, at which time he shall be returned to the court and placed on trial upon said indictment or information.

The policy of law in this state is not to try insane defendants but we have never heretofore construed K. S. A. 62-1531 as being applicable to alcoholic persons. However, when a proper showing of insanity is made, the law in effect makes the application for a inquiry for the defendant and no formal application is necessary under such circumstances. (*State v. Detar*, 125 Kan. 218, 263 Pac. 1071; *State v. Badders*, 141 Kan. 683, 42 P. 2d 943; *State v. Collins*, 162 Kan. 34, 174 P. 2d 126.) In an analogous case, *State v. Kelly*, 192 Kan. 641, 391 P. 2d 123, we analyzed the same question here urged, and it was said:

"In applying our statute (G. S. 1949, 62-1531) the test of a defendant's sanity is not the so-called M'Naghten or 'right and wrong' rule. That rule concerns sanity in the sense of criminal responsibility for an act. (*State v. Hickock & Smith*, 188 Kan. 473, 363 P. 2d 541; *State v. Latham & York*, 190 Kan. 411, 428, 375 P. 2d 788.) The question here presented concerns sanity for the purpose of being triable. Sanity in this respect is determined by appraising the present ability of the defendant to understand the nature and purpose of the proceedings taken against him and his ability to conduct his own defense in a rational manner. (*State v. Brotherton*, supra; *State v. Badders*, supra.) If the district judge has a real doubt as to the sanity of the defendant, or from his observation, reasonable claim, or credible source, he concludes there is a real doubt as to the defendant's mental condition to comprehend his situation or make his defense, it is the duty of the judge to order the inquiry even though not requested. (*State v. Collins*, supra; *Brewer v. Hudspeth*, supra.)

"As previously indicated, whether a district court on its own initiative should order an inquiry into the defendant's sanity is a matter addressed to its sound judicial discretion, and its decision will not be disturbed in the absence of an abuse of that discretion. (*State v. Collins*, supra; *State v. Smith*, supra; 23 C. J. S., Criminal Law, § 940 [2] [b]; 142 A. L. R. 966.) The defendant has the burden in this respect (5 Am. Jur. 2d, Appeal and Error, § 775, p. 218; 5A C. J. S., Appeal and Error, § 1584, p. 38) and a strong showing is required to show an abuse thereof. (*People v. Gomez*, 41 Cal. 2d 150, 258 P. 2d 825.) In *State v. Penry*, 189 Kan. 243, 245, 368 P. 2d 60, it was held that the pre-

sumption that an accused is sane and responsible for his acts exists until the contrary is shown by sufficient evidence. Where; as here, it is urged that the district court had, or should have had, a doubt as to the present sanity of the defendant, the court's failure to order the inquiry on its own motion is aided by that presumption." (l. c. 644, 645.)

Throughout the trial, the district court had ample opportunity to observe the conduct, attitude and demeanor of the defendant, and it had the right to exercise its sound judicial discretion in determining whether those characteristics were such as to warrant a conclusion that the defendant was capable to comprehend his position and make his defense.

In fairness to the district court it was never intimated or claimed before or during the trial that the defendant's condition, if one existed, was the result of insanity. Defendant's counsel candidly admits that the defendant is not insane as that term is generally used. We have thoroughly searched the record and find no evidence which substantiates a reasonable claim the defendant's mental condition was such that he was unable to comprehend his position or make his defense, and we conclude the district court did not abuse its discretion in failing to inquire into his mental condition.

Defendant advances other arguments which we have carefully considered. Our analysis finds they are without merit, and it is unnecessary to discuss them.

We find nothing in the evidence or contentions which support the defendant's position, or justify a conclusion that the district court abused its discretion or committed reversible error.

The judgment is affirmed.