No. 44,925

STATE OF KANSAS, *Appellee,* v. MARGARET PHINIS, *Appellant.*

(430 P. 2d 251)

Opinion filed July 12, 1967.

*John B. Markham,* of Parsons, argued the cause and was on the brief for the appellant.

*John Sherwood,* Assistant County Attorney, argued the cause, and *Robert C. Londerholm,* Attorney General, and *Rex Lawhorn,* County Attorney, were on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: The defendant, Margaret Phinis, was convicted of unlawfully having a pistol in her possession and control after being previously convicted of a felony contrary to K. S. A. 21-2611. The trial was before a jury on November 21, 1966. She was sentenced to the Kansas State Industrial Farm for Women. Appointed counsel has perfected this direct appeal from the conviction.

The two specifications of error urged are of a nature requiring a statement of the facts surrounding the charge filed. The facts

developed at the trial are not in any great dispute except as to ownership of the pistol. Defendant was not charged with owning a pistol.

The defendant had previously served time at the Kansas State Industrial Farm for Women. She was charged in Labette county with first degree murder in 1953. The charge was reduced to manslaughter in the fourth degree and she entered a plea of guilty. She served her required time and was discharged in 1955. The journal entry of this prior conviction was introduced in evidence on testimony by the clerk of the district court of Labette county, Kansas.

The present charge against Margaret Phinis originated in the following manner. On September 4, 1966, the sheriff of Labette county, Kansas, went to a service station in Parsons in response to a call. He talked with Eddy Hill who had been injured. The sheriff took Hill to a medical center for treatment. The exact nature of Hill's injury was not certain but it appeared to be a gunshot wound.

The sheriff and a patrolman went to Lakin Cabins in Parsons to investigate further. They arrived at cabin six, were admitted to the cabin and they talked with the four persons present. Cabin six was a three room efficiency cabin rented and occupied by a Mr. Vance and his housekeeper, the defendant herein. The front room was used by Mr. Vance as his bedroom. The middle room was used as a kitchen and contained a sofa and other furniture. The room in the rear was used by the defendant as her personal living and sleeping quarters.

In addition to Mr. Vance and the defendant, Mr. Wright and Mr. Tatum were present. As a result of investigation by the officers and in response to general questioning the following investigatory facts were developed. The parties had gathered there on the special occasion of Mr. Wright's seventy-fifth birthday. The defendant had taken a few drinks that day in the company of her friends. Eddy Hill, a mutual acquaintance of Mr. Vance and the defendant, had arrived at the apartment without invitation. He had been drinking. Both Mr. Vance and the defendant made repeated requests for him to leave but the requests were ignored. The defendant got a .38 caliber revolver from a bedside table in her sleeping quarters and fired a shot into the floor to scare Eddy Hill out of the cabin. The bullet entered the floor in the kitchen, ricocheted

into the front room and fell on a utility table. Eddy Hill fell to the floor and shouted, "I'm shot, I'm shot." He later left the cabin. The gun was not aimed at him and the bullet did not hit him. At the time of his arrival he was wearing a shoulder bandage to cover some prior injury. Mr. Tatum took the gun away from the defendant after the shot was fired. Mr. Tatum kept the gun under his belt until just before the officers arrived. He then placed it under a pillow on the sofa in the kitchen. In response to questions Mr. Tatum advised the sheriff of the location of the gun and the sheriff took the gun into custody. The sheriff asked all four persons present who owned the gun. Mr. Wright and Mr. Tatum said they did not know. Mr. Vance stated it was not his gun and he did not know the gun was in the cabin.

The defendant and Mr. Tatum were then taken to the police station. Mr. Wright was not required to go because he had but one leg and was in a wheel chair. Mr. Vance also was confined to a wheel chair and he remained at home.

Mr.. Tatum was questioned at the police station and released. The defendant was first advised of her constitutional rights and then questioned by the sheriff and the patrolman. No written statement was taken from the defendant. She was questioned for thirty minutes before being charged and placed in jail. Counsel was later appointed.

At the trial the sheriff testified without objection that when he questioned the defendant at the cabin and at the police station he asked if she owned the gun and she said she did. He asked at the police station if she didn't know it was a violation for her to have a gun in her possession and she said she knew it. She further told him she had been convicted of fourth degree manslaughter and had served her time. Her prior conviction was previously known to the sheriff.

The patrolman testified that before questioning defendant at the police station he filled out a standard form which explained "their constitutional rights to them." Defendant told the officers she was willing to talk and signed the form. Thereafter the defendant told them she fired the shot into the floor to scare Mr. Hill but the gun went off accidentally. She told the officers Mr. Vance owned the gun and gave it to her. The defendant admitted she had been convicted of manslaughter in 1953 and served sixteen months. No contemporaneous objections were made to any of this testimony. Wright, Tatum and Vance testified at the trial.

At the close of the state's evidence the defense moved for an "acquittal" for the reason that defendant was not fully advised of her constitutional rights at the time of the interrogation at the Lakin Cabins and at the police station. The motion was urged under the authority of *Miranda v. Arizona,* 384 U. S. 436, 16 L. ed. 2d 694, 86 S. Ct. 1602 (1966). It was considered and overruled by the trial court and is now specified as error. It was presented to the trial court on motion for new trial and overruled. The trial of defendant occurred in November 1966 and the authority of *Miranda* should be applied herein so far as applicable. (See *Johnson v. New Jersey,* 384 U. S. 719, 16 L. ed. 2d 882, 86 S. Ct. 1772.)

The *Miranda* decision applies to both confessions and admissions. It sweeps away the bases of distinction. The court states:

"The warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant. No distinction can be drawn between statements which are direct confessions and statements which amount to 'admissions' of part or all of an offense. The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination." (p. 476.)

For the present we pass over any question of the sufficiency of the advice of rights given to the defendant as measured by the guidelines in *Miranda.*

Such guidelines are a measure for the courts to apply in determining whether a confession or statement is voluntary and admissible. They are not to be used as a trap or a snare for the prosecution in the trial of a defendant. The defendant made no objection to the testimony of the officers concerning the admissions when such testimony was given. The officers testified that she was advised of her constitutional rights and she voluntarily signed a waiver form thereby knowingly giving consent to the interrogation. On cross-examination the defense elicited certain discrepancies in the substance of the advice of rights given to the defendant. The trial court found the guidelines set forth in *Miranda* had been substantially complied with and admitted the testimony of the officers as to the defendant's voluntary statements.

The defendant now contends she was insufficiently advised in that the officers did not specifically advise her that (1) she had a right to remain silent, (2) any statement she did make might be used as evidence against her, and (3) she had a right to the presence of an attorney during the interrogation, either retained or appointed.

The wording employed by the officers in advising her of these rights was not identical to that used by the United States Supreme Court in setting the guidelines in *Miranda*, but the import was the same. Even if the advice of rights was insufficient, admission into evidence of statements made by a defendant during custodial interrogation would not be grounds for an "acquittal." A new trial would be the proper remedy. We believe defendant misinterprets the holding in *Miranda* and an examination of some of the history leading up to that case may be helpful.

Confessions and admissions of one charged with crime were a primary source of information upon which convictions were based under the common law. But a confession coerced through fear or induced by a promise of leniency cannot be considered reliable. Coerced confessions were identified in the 18th and 19th centuries with despotic governments. At that time evidence tending to prove coercion went to the credibility of the statement given and not to its admissibility in evidence. If a jury chose to convict a defendant they rejected all proof of coercion, accepted the statement and the appellate court did not disturb the verdict. (See Constitutional Limitations on Evidence in Criminal Cases by the Institute of Continuing Legal Education.)

However, our founding fathers built into our constitution certain safeguards in the 5th and 6th amendments bearing directly upon the rights of an accused. The 5th amendment provides that a person should not be compelled in any criminal case to be a witness against himself, or be deprived of life, liberty or property without due process of law. The 6th amendment provided the accused should have the assistance of counsel for his defense in all criminal prosecutions.

The Supreme Court of the United States as early as 1941 indicated that due process under the 5th amendment required the exclusion of evidence, whether true or false, if coerced from a suspect. (*Lisenba v. California*, 314 U. S. 219, 86 L. ed. 166, 62 S. Ct. 280.) However, constitutional protections for the citizen can be waived and waiver can be applied to the privilege against self-incrimination and the right to counsel as indicated in the opinions of the United States Supreme Court in both *Miranda* and *Escobedo*. (See, also, *State v. Freeman*, 195 Kan. 561, 408 P. 2d 612, cert. den. 384 U. S. 1025, 16 L. ed. 2d 1030, 86 S. Ct. 1981; *State v. Brown*, 198 Kan. 473, 426 P. 2d 129; *State v. Wilson*, 198 Kan. 532, 426 P. 2d 288.) The issue in such case is the voluntary or involuntary nature

of the statement sought to be introduced. This in turn determines the question of admissibility of the statement. There has been a gradual growth of the law in this area.

In *Escobedo v. Illinois,* 378 U. S. 478, 12 L. ed. 2d 977, 84 S. Ct. 1758 (1964), it was held if the right to counsel, as provided by the 6th amendment, was withheld from an accused "no statement elicited by the police during the interrogation may be used against him at a criminal trial." The withholding of counsel renders any statement thereafter made involuntary and inadmissible in evidence. There the court said:

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' *Gideon v. Wainwright,* 372 U. S. 342 [9 L. ed. 2d 804, 93 A. L. R. 2d 733], and that no statement elicited by the police during the interrogation may be used against him at a criminal trial." (pp. 490, 491.)

In *Miranda,* supra, the court said:

"Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned." (p. 444.)

Later in the opinion the court said:

". . . Our aim is to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process. . . ." (p. 469.)

In the light of what was said in *Miranda* and *Escobedo* let us examine the facts of this case to determine the voluntary or involuntary nature of the admissions of defendant while the officers were making their investigation on the scene at Lakin Cabins in the presence of Mr. Vance, Mr. Wright, Mr. Tatum and the defendant. At that stage of the investigatory process the general inquiry was of a nature and for the purpose of determining if a crime had been committed upon the person of Eddy Hill who claimed he had been shot by someone in the cabin. The nature of the crime had not been determined and the inquiry into such had not focused on any particular suspect. Clearly the investigation was not the custodial interrogation referred to in *Escobedo* and *Miranda.* The surroundings or place of the investigation, the circumstances giving rise to the inquiry and the presence of friends of the defendant indicate it was an "on the scene" investigation. No advice of rights was required at that step of the investigation. The officers were not certain a crime had been committed by anyone.

In *Miranda* the court said:

"Our decision is not intended to hamper the traditional function of police officers in investigating crime. See *Escobedo v. Illinois,* 378 U. S. 478, 492, [12 L. ed. 2d 977, 986, 84 S. Ct. 1758]. When an individual is in custody on probable cause, the police may, of course, seek out evidence in the field to be used at trial against him. Such investigation may include inquiry of persons not under restraint. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." (pp. 477, 478.)

Custodial interrogation as defined in *Miranda* did not begin until after Mr. Tatum and the defendant were taken to the police station. Mr. Tatum was questioned and released. The record then indicates the sheriff advised the defendant she was in custody for possession of a firearm, she had a legal right to say nothing, anything she said could be used against her in a court of law, and if she could not afford representation the state would represent (*sic*) her with a lawyer. Defendant argues that this advice as to rights was insuffi-

cient because under cross-examination the sheriff said he told her "if she did not have the money to hire representation to represent her *in court* the state would pay for representation for her."

The patrolman from Parsons who was present throughout the investigation and interrogation testified that both the sheriff and he advised the defendant of her rights. On direct examination he testified as follows:

"QUESTION: And what did she say in relation to this; I mean, what did you tell her, and what did she say back?

"ANSWER: I filled out the standard form we have that explains their constitutional rights to them, that they have the right to remain silent, they don't have to answer any of our questions, they have a right to an attorney if they so wish, and it—also that if they cannot pay for an attorney, the state will furnish them an attorney.

"QUESTION: Now what did she say to this then when you asked her this?

"ANSWER: She said she was willing to talk to us, and she signed the statement, or the form rather."

On cross-examination the patrolman testified he told her she had the right to an attorney right then and the state would furnish her one right then, even if she didn't have the money. She signed the form and she did not ask for an attorney. The interrogation lasted not more than thirty minutes.

The form signed by the defendant was offered in evidence but excluded on objection made by the defense that it did not comply with the requirements of *Miranda*. The form signed by defendant is not included in the abstract or record and we cannot speculate as to its contents. It would appear that such form voluntarily signed by a defendant prior to interrogation would be admissible in evidence on the hearing to determine admissibility even though the guidelines set forth in *Miranda* were not fully or clearly enumerated in the written form.

The defendant has a right to request the judge to hear and determine the question of the admissibility of a confession out of the presence and hearing of the jury under K. S. A. 60-408. No such request was made by defendant. If such request is made the judge should hear and determine the matter outside the presence of the jury.

K. S. A. 60-408 reads:

"When the qualification of a person to be a witness, or *the admissibility of evidence,* . . . is in issue, the issue is to be determined by the judge, and he shall indicate to the parties which one has the burden of producing evidence

and the burden of proof on such issue as implied by the section under which the question arises. *The judge may hear and determine such matters out of the presence or hearing of the jury, except that on the admissibility of a confession of the accused in a criminal case, the judge, if requested, shall hear and determine the question out of the presence and hearing of the jury.* But this section shall not be construed to limit the right of a party to introduce before the jury evidence relevant to weight or credibility." (Emphasis added.)

Under the rationale of *Jackson v. Denno,* 378 U. S. 368, 12 L. ed. 2d 908, 84 S. Ct. 1774, 1 A. L. R. 3d 1205, it would appear advisable for the judge to excuse the jury when determining the admissibility of statements obtained by police officers during custodial interrogation of a defendant even though our statute appears to make this permissive except for confessions. In *State v. Jones,* 198 Kan. 30, 37, 422 P. 2d 888, this court previously said:

". . . However, we enter our caveat that the better practice would dictate the district court hear the foundation evidence out of the presence and hearing of the jury and decide the issue whether the confession and/or statement of the defendant was his free and voluntary act."

The oral testimony of the officers as to the rights advised established the sufficiency thereof under the *Miranda* guidelines even though the testimony of the two officers varied in certain details. There was sufficient evidence for the court to find defendant knowingly and intelligently waived the rights guaranteed to her under the 5th and 6th amendments and the statements made were voluntary and admissible.

We note the defendant took the witness stand in her own defense and testified to practically the same facts regarding possession and use of the pistol. She denied ownership of the gun, but testified the officers advised her of her constitutional rights, except for the right to counsel before being questioned.

Defendant does not point out in this appeal what particular statements elicited by the interrogating officers and introduced in evidence by the prosecution were involuntary and inadmissible. The failure to give proper advice of constitutional rights does not of itself require a reversal of a conviction unless evidence obtained thereby is used during a trial. It is the use of evidence obtained by or as a result of improper custodial interrogation that requires a reversal. Use of such evidence may require a new trial to be granted but it does not justify acquittal as urged by the defendant in her motion filed at the close of the state's evidence.

We hold the trial court properly determined that any statements made by defendant at the cabin were elicited by the officers in the

investigatory stage of the inquiry before the investigation had begun to focus on the defendant. We further hold that defendant was advised of her constitutional rights before the accusatory stage within the purview of *Miranda*. Any statements made by her in response to custodial interrogation were made after she was properly advised of her rights, were made voluntarily and knowingly and were properly admitted in evidence by the trial court.

Turning now to defendant's second specification of error, it is contended that the evidence does not support a verdict of guilty on the issue of possession and control of a pistol.

K. S. A. 21-2611 reads:

"It shall be unlawful for any person who has previously been convicted in this state or elsewhere of committing or attempting to commit murder, manslaughter (except manslaughter arising out of the operation of an automobile), kidnaping, mayhem, forcible rape, assault to do great bodily harm, or any other felonious assault, robbery, burglary, extortion, grand larceny, receiving stolen property, aiding escape from prison or unlawfully possessing or distributing habit-forming narcotic drugs or *cannabis sativa*, commonly known as marihauna, to own a pistol, or to have or keep a pistol in his possession, or under his control. Any person violating this section shall be deemed guilty of a felony, . . ."

Defendant was not charged with ownership of a pistol. The alternative charge was made against her of having a pistol in her possession and control. The defendant does not object to the court's instructions on possession and control. The jury was instructed that possession and control as used in the statute do not turn upon a physical handling of the prohibited weapon alone, and if the handling was an innocent one without the intent to have, possess or control the weapon such act was not prohibited by the statute.

Neither the defendant nor the state cite any case involving possession or control of a pistol after conviction of a felony in which the words "possess" or "control" as used in the statute have been defined. Our limited search has disclosed no Kansas case in which possession or control of a pistol was defined by this court.

Webster's unabridged dictionary (third) defines possession as the act or condition of having in or taking into one's control or holding at one's disposal. Control is defined as the act or fact of controlling, the power or authority to guide or manage.

In *People v. McKinney*, 9 Cal. App. (2d) 523, 50 P. 2d 827, the statute prohibited possession of a "sap" or blackjack, the prohibited

article was found in a suitcase under a bed in a room occupied jointly by defendant and another man, and the court said:

"Possession may be proved without proof of ownership, and although ownership implies the right to possess (Civ. Code, sec. 654), possession may exist entirely apart from ownership and ownership may be had of a thing not in the owner's possession (*Estate of Stanford*, 126 Cal. 112 [54 Pac. 259, 58 Pac. 462, 45 L. R. A. 788]). Under the statute involved here, possession alone had to be proved, and Bouvier defines possession as 'the detention or enjoyment of a thing which a man holds or exercises by himself, or by another who keeps or exercises it in his name'. We feel that under the evidence presented here the question of defendant's possession of the 'sap' was one of fact, properly presented to the jury for determination. Likewise as to the evidence generally, while it is true that the jury might have been justified in rendering a different verdict, the problem of determining questions of fact is left entirely to it (Pen. Code, sec. 1126), and with such determination this court may not interfere in the face of conflicting evidence." (p. 524)

Although the statute in question (K. S. A. 21-2611) does not require intent to do a prohibited act as a prerequisite for its application, (*State v. Wheeler*, 195 Kan. 184, 186, 403 P. 2d 1015), yet the statute contemplates proof of possession and control which is more than an innocent handling of the pistol without intent to have, possess or control the same.

The pistol in question was in a table drawer located in a room where defendant slept. The three room cabin was occupied by Mr. Vance and the defendant. Mr. Vance testified he did not own the pistol and had never seen it before. The two visitors present when the gun was found denied ownership. The defendant obtained the gun from the table drawer with the intent to scare the unwanted guest. The weapon fired into the floor while it was in her hand. Mr. Tatum then took the gun from her and later placed it under a pillow on the sofa. These facts and circumstances were placed in evidence. They appear sufficient to establish possession and control of the pistol and if they were believed by the jury they would support a verdict.

There was sufficient evidence introduced for the jury to determine the defendant had possession and control of the pistol within the meaning of K. S. A. 21-2611 and this court will not disturb the verdict. (*State v. Donahue*, 197 Kan. 317, 318, 416 P. 2d 287, and cases cited in Hatcher's Kansas Digest, Supp., Criminal Law §438.)

The judgment is affirmed.