No. 45,207

State of Kansas, *Appellee,* v. Lee T. Porter, a/k/a Barney Porter, *Appellant.*

(443 P. 2d 360)

Opinion filed July 13, 1968.

*P. A. Townsend,* of Topeka, argued the cause and was on the brief for the appellant.

*Robert D. Hecht,* County Attorney, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This case chronicles another episode in the eventful life of Lee T. Porter, also, and perhaps better known to certain residents of Topeka, as Barney Porter.

On April 3, 1967, a search warrant was issued to search Mr. Porter's residence for a pistol, and a bevy of five police officers proceeded to descend upon Porter's premises to execute the mandate of the warrant.

As Mr. Porter greeted the officers upon their arrival, one of the policemen, Captain Ray Pope of the Topeka Police Department, told Porter that he wanted, or had a search warrant for, his pistol. To this verbal communication Mr. Porter replied "You can't have my pistol." Upon being handed the search warrant, Porter examined the same and then led the officers to a locked bedroom, unlocked the door, walked to a dresser, opened the third drawer and started to reach for a pistol which was lying there. However, one of the officers reached in, took possession of the pistol and unloaded it.

Following the discovery of the loaded pistol, the defendant was placed under arrest and was escorted to jail. In due course of time an information was filed in district court charging Mr. Porter under K. S. A. 21-2611 with having a pistol in his possession and under his control, having previously been convicted of third degree manslaughter.

The case was tried to the court, where the state's evidence reflected the facts we have just related. At the conclusion of the state's case, a motion for discharge was interposed, which was overruled by the court. No evidence was introduced by or on behalf of the defendant, and the trial court found Mr. Porter guilty as charged. Two prior convictions were introduced at time of sentence and the defendant was sentenced to a term of not less than fifteen years as a "three time loser," pursuant to the provisions of the Habitual Criminal Act.

Bitter complaint is lodged against the admission into evidence of the defendant's statement directed to Captain Pope that "You can't have my pistol." This statement, it will be recalled, was made by Porter in reply to Pope's verbal advice that they had come for "his" pistol. It was and is contended that Porter's response was in the nature of a confession or an admission, made to an officer

during custodial investigation without appropriate warning having first been given. In other words the defendant maintains he should have been given a "Miranda" warning, failing which his statement was inadmissible.

The defendant does not contend that his remark, which we may consider as inculpatory, was either coerced or involuntary. Indeed, such a claim would be absurd, for clearly the statement bears no mark of force or compulsion in its making. The entire thrust of Porter's argument is that the incriminating exclamation was made during custodial interrogation and hence, at its inception, was tainted with inadmissibility under the authority of *Escobedo v. Illinois*, 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758 and *Miranda v. Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.

In our opinion, the defendant's position is untenable. While it is true that Porter was given no warning, and was not advised of his rights at the time the police arrived, the officers came not to question Porter but to search his house for a gun. Accordingly, no questions were asked of him; he was merely told the purpose of the visitation. We think it apparent that Porter's privilege against self-incrimination had not been placed in jeopardy when he spontaneously spoke his mind to Captain Pope.

An in-custody interrogation of a suspect is one conducted while he is held in custody at a police station, jail or similar facility, or while his freedom of action is otherwise significantly limited or curtailed. In *Miranda v. Arizona*, supra, the term is thus defined:

". . . By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. . . ." (p. 444.)

It is our view that the circumstances under which Porter uttered his incriminating comment do not bring this case within the ambit of the Escobedo and Miranda decisions. Although five officers were in attendance at Porter's residence, we find no suggestion in the record that their presence was oppressive or created an aura of compulsion. Furthermore, they initiated no process of interrogation against the defendant.

The Miranda rule is not intended to vitiate admissions voluntarily made and unattended by threat of compulsion. This was forcefully pointed out by Justice O'Connor in the recent case of *State v. Little*, 201 Kan. 94, 439 P. 2d 387. In Miranda, itself, we find this language used by the august court.

". . . Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affect by our holding today." (p. 478.)

We are forced to conclude that the defendant's statement was properly admitted in evidence.

The defendant complains that under the doctrine of entrapment his statement was likewise inadmissible, and he cites authorities to the effect that the state may not lure its citizens into the commission of criminal acts. This contention is devoid of merit, for the defendant misapprehends the scope of the doctrine he seeks to invoke. The defense of entrapment relates to the procurement or inducement of crime. (21 Am. Jur. 2d, Criminal Law, § 143, pp. 211-212.) The evidence in this case does not remotely suggest that Porter was induced to commit any crime. Neither does the evidence suggest that Captain Pope's statement to Mr. Porter was designed to elicit any comment, in return, let alone an inculpatory statement.

Finally, the defendant contends the evidence does not support the verdict, in that it fails to establish his possession or control of the prohibited pistol. The point is not well taken. The record discloses that after examining the search warrant, Mr. Porter observed that it seemed to be in order and proceeded to lead the officers to a bedroom, unlocked the door with a key which was in his possession, walked over to a dresser and pulled out a drawer from which one of the officers procured a loaded pistol. These circumstances standing alone would, in our opinion, be sufficient to justify an inference that the defendant was in possession and control of the firearm. Porter's extemporaneous statement at the outset of the search was a substantiating factor tending to corroborate his exercise of dominion over the gun.

In *State v. Phinis,* 199 Kan. 472, 430 P. 2d 251, this court had occasion to consider the extent and quality of the possession or control of a pistol which is contemplated by the statute, and we said:

"Webster's unabridged dictionary (third) defines possession as the act or condition of having in or taking into one's control or holding at one's disposal. Control is defined as the act or fact of controlling, the power or authority to guide or manage." (p. 481.)

The defendant argues in his brief that his wife occupied the bedroom with him (although there is no evidence to this effect) and that the gun could have belonged to her and have been subject to her control. Apart from the fact that the record is barren of evidence tending to implicate his wife, Porter's argument falls far short of providing a basis for absolving him of guilt.

In *State v. Hart,* 200 Kan. 153, 434 P. 2d 999, the charge was possession of burglar tools in violation of K. S. A. 21-2437. In response to the defendant's claim that one of the tools was found on his companion, and hence was inadmissible as to him, we said that possession of burglary tools may be joint as well as individual, and that two or more persons may have the power of control over them and intend to control and use the tools jointly. The same rule is applicable to the possession and control of prohibited guns.

Although the evidence in this case may be largely circumstantial, we deem it amply sufficient, on appeal, to support the verdict. In the recent case of *State v. Helm,* 200 Kan. 147, 434 P. 2d 796, we considered our appellate function in reviewing a conviction based on circumstantial evidence, and we said:

"When considering the sufficiency of circumstantial evidence to sustain a conviction of crime on appeal, the question is not whether the evidence is incompatible with any reasonable hypothesis except guilt. That question was for the jury and the trial court. The function of the appellate court is limited to ascertaining whether there was a basis in the evidence for a reasonable inference of guilt. (Citing cases.)" (p. 151.)

The trial court properly overruled the defendant's motion for discharge made at the conclusion of the state's case, and its judgment finding the defendant guilty of the offense charged must be affirmed.

We note that sentence was pronounced against the defendant on October 20, 1967, at which time evidence was introduced of two prior convictions, one of them being the third degree manslaughter conviction set out in the information as an element of the offense charged. Because of his two prior convictions, Porter was sentenced to a term of not less than 15 years, pursuant to the provisions of K. S. A. 21-107a. This sentence was imposed prior to our decision in *State v. Ware,* 201 Kan. 563, 442 P. 2d 9, in which we held that a previous felony conviction relied on to establish a violation of the felony firearms statute (K. S. A. 21-2611) may not also be used to invoke the provisions of the Habitual Criminal Act.

The validity of the sentence pronounced against Mr. Porter has

not been questioned in this appeal, since the appeal was perfected long before we spoke in *State v. Ware,* supra. However, we believe it evident that the sentence is invalid under the rationale of Ware and must be set aside for that reason.

The judgment of the court below is affirmed as to the conviction and reversed as to sentence and this cause is remanded with directions that the defendant be re-sentenced in accordance with the views herein expressed.