No. 46,076

STATE OF KANSAS, *Appellee*, v. JACK R. FARRIS, *Appellant*.

(486 P. 2d 1404)

Opinion filed July 16, 1971.

*Russell Shultz*, of Wichita, argued the cause and was on the brief for the appellant.

*R. K. Hollingsworth*, Deputy County Attorney, argued the cause, and *Vern Miller*, Attorney General, and *Keith Sanborn*, County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Defendant Jack R. Farris, appeals from a conviction by a jury of the possession of a pistol in violation of K. S. A. 21-2611 [now 1970 Supp. 21-4204.].

On December 1, 1969, defendant was convicted of burglary in the third degree and larceny in connection therewith. He was released on probation on the same day. Two days thereafter, on December 3, 1969, defendant was arrested. An information was filed charging him with four offenses—two counts of robbery in the first degree, possession of a pistol after conviction of a felony, and possession of non-narcotic drug.

The jury was unable to agree on the two robbery counts. The defendant was acquitted of possession of a non-narcotic drug and convicted of possession of a pistol. The state did not retry the robbery charges. Thereafter defendant perfected this appeal from his conviction of possession of a pistol under 21-2611.

As a result of information concerning the armed robbery of a liquor store, defendant was arrested by the Wichita Police the afternoon of December 3, 1969. Defendant and his automobile had been under surveillance by the police for about an hour after the report of the robbery. At about 3:50 p. m. defendant was driving his 1965 Chevrolet when he was stopped by three Wichita Detectives.

Carl Wenke was with defendant at the time. Defendant was advised of his rights and then stated he would talk with the detectives. Detective Harold Norman related the conversation as follows:

" 'We asked him where he had just been. He stated that he had been trying to sell his pistol because he had just been convicted of a burglary and could not possess a pistol and that he had sold it. I asked him where he had sold it. He stated he did not wish to tell us . . . No, he wouldn't tell us the location either.';"

Later the detectives learned from Wenke that defendant had left the pistol at the home of his mother-in-law.

Robert Paxton, the husband of defendant's mother-in-law, was called as a witness for the state. He testified that about 5:30 the afternoon of December 3, 1969, two detectives came to his home to pick up a pistol. On cross-examination, Paxton testified that he overheard a conversation between defendant and his wife, which he related as follows:

" '. . . Well, he [defendant] asked if she'd keep the pistol and she said if it wasn't hot, and he said it is not hot, said I am not supposed to have a gun, I want to keep it over here until I can get rid of it—just get rid of it.' "

Imogene M. Mitchell, a clerk at the liquor store which had been robbed early in the afternoon of December 3, identified defendant as one of the robbers and stated "that he pulled his pocket back revealing a gun stuck in his belt."

Wenke testified that he had accompanied defendant downtown to several pawnshops where he had attempted to sell the pistol.

Defendant testified in his own behalf, giving a different version of his conversation with the detectives at the time of his arrest. His testimony is narrated:

". . . [H]e had advised the officers that he had tried to sell the gun at several pawn shops and that he couldn't get enough for it there so that he had sold it to a friend, but that he had not delivered it and he had taken it to his mother-in-law until the transaction could be completed."

Lena Paxton, defendant's mother-in-law, testified that defendant brought the pistol to her house to hold for him; that it was in a brown paper sack; and that "at the time she did not see it was a gun."

At the conclusion of all the evidence defendant moved for discharge on the count in question on the ground the evidence was insufficient. On appeal, defendant claims the trial court's adverse ruling was erroneous. Defendant argues that all of the evidence showed that he was attempting to comply with the law. He says

that the willfulness of possession, the keeping and the control of the pistol in question were not shown.

We cannot agree with defendant's position. The evidence of both the state and defense, which we have summarized, left for the jury's determination a clearly defined question of fact whether defendant had deprived himself of his right to the possession and control of the pistol.

The testimony of both Mr. and Mrs. Paxton was to the effect that defendant gave Mrs. Paxton the gun to hold for him. Mrs. Mitchell testified defendant had a pistol on him at the time of the robbery. Even though the jury could not agree on the robbery count, her testimony was evidence of defendant's possession. The credibility of defendant's testimony was put in doubt by reason of the sharp variance between his version of his conversation with the arresting officers and the testimony of Detective Norman.

We believe there is ample evidence to support an inference that defendant had willfully retained the ownership and the right to possession and control of the pistol.

K. S. A. 21-2611, under which the information herein was drawn, provides in substance that it shall be unlawful for any person who has been convicted of any of the enumerated offenses, including burglary, "to own a pistol, or to have or keep a pistol in his possession, or under his control."

The elements necessary to establish an offense under 21-2611 have been considered by this court on many occasions. In *State v. Wheeler*, 195 Kan. 184, 403 P. 2d 1015, the requirements of the statute were set out in these words:

". . . However, the statute in question (K. S. A. 21-2611) does not require intent as a prerequisite for its application. It merely requires that the accused have a previous conviction for certain specified offenses among which is grand larceny and ownership, possession or control of a pistol having a barrel less than twelve inches long. . . ." (p. 186.)

In *State v. Phinis*, 199 Kan. 472, 430 P. 2d 251, this court had occasion to consider the quality of the possession or control of a pistol contemplated by the statute, we said:

"Webster's unabridged dictionary (third) defines possession as the act or condition of having in or taking into one's control or holding at one's disposal. Control is defined as the act or fact of controlling, the power or authority to guide or manage." (p. 481.)

The nature of the possession contemplated by the statute was again considered in *State v. Porter*, 201 Kan. 778, 443 P. 2d 360,

cert. den. 393 U. S. 1108, 21 L. Ed. 2d 805, 89 S. Ct. 919, wherein we held:

"The possession and control of a pistol contemplated by K. S. A. 21-2611 is the exercise of dominion thereover, or the right and authority to possess, control and manage its use and disposition." (Syl. ¶ 3.)

Viewed in the light of this court's interpretations of the statute in question, we believe the record discloses adequate substantial evidence to justify submission to the jury for determination the controlling question whether defendant had surrendered possession of the pistol.

Defendant claims error in the trial court's refusal to submit a requested instruction. Defendant has only abstracted his requested instruction and the trial court's instruction No. 10; thus the question is not properly presented for our review. (*State v. Kowalec*, 205 Kan. 57, 468 P. 2d 221; and *State v. McCorvey*, 199 Kan. 194, 428 P. 2d 762.) Nevertheless we have examined defendant's contention.

As we have noted, the trial court in instruction No. 10 gave the jury the elements of the offense under the terms of the statute. After the case was submitted, in response to a question by the jury, the court further instructed on the meaning of possession as follows:

"Possession may mean to have personal charge of or exercising the right of ownership, management or control over. A person knowingly has an article on his person may be said to have possession.

"Control may mean to govern, have under command, and authority. To exercise directing, guiding and restraint over.

"The Court's interpretation of Instruction 10 is that the law as stated therein means just what it says."

Defendant claims the court should have submitted his requested instruction which reads:

"You are instructed that the possession of a pistol after a felony conviction as set forth in Count Three of the Information means wilful possession with bad faith and an evil motive. Wilfulness implies bad faith and an evil motive. An act is done knowingly if it is done voluntarily and purposely and not due to mistake, inadvertence or some other innocent reason. Therefore, if you find that the defendant possessed a pistol without bad faith or evil motive, but for some other innocent reason you must find him not guilty of Count Three."

In effect, defendant's requested instruction would require the state to prove beyond a reasonable doubt that defendant not only willfully possessed the pistol but that he did so in "bad faith" or with an "evil motive." Defendant cites no authority in support of his position and we know of none.

Willful possession or control of a pistol, as distinguished from the innocent handling thereof, is all that is required by the statute in this regard. (*State v. Runnels*, 203 Kan. 513, 456 P. 2d 16; *State v. Phinis*, supra; and *State v. Wheeler*, supra.) In the instant case, certainly defendant had willful possession of the pistol in the first instance; the question framed by the evidence was whether defendant had surrendered control of it. We believe the court's instruction No. 2 and the answer to the jury's inquiry fully and fairly presented the question to the jury.

Finding no reversible error the judgment is affirmed.